Illinois Central R. R. Co. *v.* Coussens, Admrx.

No. 39287 February 7, 1955 77 So. 2d 818

104

*Phillips & McLendon*, McComb, for appellant.

*B. D. Statham,* Magnolia, for appellee.

ARRINGTON, J.

The appellee, as administratrix of the estate of her husband, H. R. Coussens, deceased, brought this suit in the Circuit Court of Pike County against the appellant, Illinois Central Railroad Company, for the wrongful death of Coussens, and was awarded damages in the sum of $25,000, from which judgment the appellant appeals.

This suit was brought under the Federal Employers' Liability Act, 45 U. S. C. A., Section 51, et seq., which provides that every common carrier engaged in interstate commerce shall be liable in damages to any persons suffering injury while employed by such carrier in such commerce, or, in case of death, to the personal representative of such employee for the benefit of the surviving widow and children of such employee, "and such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

Section 53 of the act provides that "the fact that the employee may have been guilty of contributory negligence shall not bar recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

In 1939, Section 54 of the act was amended to abolish assumption of risk as a defense to actions brought under this act, and provides that, "in any action to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risk of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier; . . ."

Appellee charged that the appellant railroad was negligent in failing to exercise reasonable care to furnish the deceased with a reasonably safe place within which to work. The appellant denied that it was negligent under the facts of this case.

The substantial facts are as follows: H. R. Coussens, the deceased, was 54 years of age and had worked for the appellant thirty-six years. He was employed in the bridge and building department, and was classified as a carpenter, although he was a blacksmith and welder. On March 11, 1952, he reported for duty at the shops of the appellant in McComb, Mississippi, at 6:45 a.m., at which time he was directed by his foreman, W. H. McNeely, to fix a hinge on a locker in the storeroom. Upon his return about 8:30 a.m., he and his helpers, Freeman and Patterson, went to the coal chute to replace a bushing on the middle wheel on the south side of the coal bucket. The coal chute is a large tower-like structure used to load coal on the tenders of appellant's engines. A large bucket operates in a shaft moving coal from a pit below the ground to compartments in the upper portion of the structure from whence coal is loaded for use by appellant's engines. The bucket moved up and down on tracks

in a concrete shaft, and was open on three sides. A concrete retaining wall completely enclosed the shaft in which the bucket moved from a point four and one-half feet above ground level downward. The top of the concrete retaining wall on the south side of the shaft was eighteen feet ten inches from the bottom of the pit. This south retaining wall, the only wall involved in this suit, was eight feet wide. The enclosed shaft at ground level was eight feet four inches from east to west and six feet eight inches wide from north to south. The coal bucket weighed approximately 1,850 pounds, and its dimensions are five feet by five feet at the top, tapering to two and one-half feet by five feet at the bottom, and four feet deep. On the occasion in question one two by ten inch piece of timber had been placed immediately south of the south retaining wall of the shaft from east to west, giving the workmen a platform eighteen inches wide upon which to work. The top of the coal bucket had been pulled up approximately three feet above the top of the south retaining wall and the bucket chained against the east wall of the shaft and secured in position. The axle upon which the bushing was being repaired was approximately fourteen inches above the top of the south retaining wall. Deceased and his two helpers were working on the bucket. All three of the men were on the platform, and at the very edge of the shaft eighteen feet ten inches above the concrete floor of the pit. About thirty minutes before the accident, deceased's foreman, Mr. McNeely, was present and observed the operation, and was directing the repairs. The deceased was seated on top of the south retaining wall towards the west end of the shaft; he took the bushing and tapped it on the axle, and it appeared to be too tight; he shook the bucket and told the foreman that the bushing was too tight. McNeely, the foreman, at this time observed grease on the deceased's hands and told him to stop moving the bucket, that the weight in the bucket when it was loaded

would dump it. Then Freeman, one of the helpers, took a block of wood and held it against the bushing, and Patterson, with a maul, drove the bushing in place. The deceased, unobserved by any of the men present, fell to the bottom of the pit, the fall inflicting injuries that resulted in his death on April 3, 1952. No safety measures of any nature were taken to prevent the workmen from falling into the pit.

The primary question in this case is whether the death of Coussens resulted "in whole or in part from the negligence of any of the officers, agents or employees of" the appellant railroad company, by which he was employed, or whether Coussens' death resulted solely through his own negligence.

First and foremost in our consideration of this cause is the knowledge that this Court must follow the interpretations put upon the Federal Employers' Liability Act by the Supreme Court of the United States. The rights created by the act are federal rights granted employees of designated carriers by the Congress of the United States, protected by federal, rather than local rules of law. Regardless of the local rule prevailing in a given jurisdiction, suits brought in the State Courts under the Federal Employers' Liability Act are to be tried and determined in accordance with the provisions of said act as construed by the Supreme Court of the United States. St. Louis-San Francisco Ry. Co. v. Dyson, 207 Miss. 639, 43 So. 2d 95; New Orleans & Northeastern R. R. Co. v. Harris, 247 U. S. 367, 36 S. Ct. 535, 62 L. Ed. 1167; Tennant v. Peoria & P. R. Co., 321 U. S. 29, 645 S. Ct. 409, 88 L. Ed. 520, 15 N. C. C. A. N. S., 647; Wilkerson v. McCarthy, 336 U. S. 53, 69 S. Ct. 413, 93 L. Ed. 497; Lavender v. Kurn, 327 U. S. 645, 66 S. Ct. 740, 90 L. Ed. 916; Bailey v. Central Vermont Ry., Inc., 319 U. S. 350, 63 S. Ct. 1062, 87 L. Ed. 1444.

The Supreme Court's interpretation of the act has been in the light of the common law, and it is clear from the decisions of that Court that the common law concept

predicating negligence upon the employers' failure to exercise reasonable care to provide workmen with a reasonably safe place to work is incorporated into the act. This is made abundantly clear by the forceful statement of the United States Supreme Court in Bailey v. Central Vermont Ry., Inc., supra, in the following language:

"Section 1 of the Act makes the carrier liable in damages for any injury or death 'resulting in whole or in part from the negligence' of any of its 'officers, agents, or employees.' The rights which the Act creates are federal rights protected by federal rather than local rules of law. Second Employers' Liability Cases (Mondou v. New York, N. H. & H. R. Co.) 223 U. S. 1, 56 L. Ed. 327, 32 S. Ct. 169, 38 L. R. A. (N. S.) 44, 1 N. C. C. A. 875; Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 58 L. Ed. 1062, 34 S. Ct. 635, L. R. A. 1915C 1, 8 N. C. C. A. 834, Ann. Cas. 1915B 475; Chesapeake & O. R. Co. v. Huhn, 284 U. S. 44, 76 L. Ed. 157, 52 S. Ct. 45. And those federal rules have been largely fashioned from the common law (Seaboard Air Line R. Co. v. Horton, supra) except as Congress has written into the Act different standards. Tiller v. Atlantic Coast Line R. Co., 318 U. S. 54, ante, 610, 63 S. Ct. 444, 143 A. L. R. 967. At common law the duty of the employer to use reasonable care in furnishing his employees with a safe place to work was plain. 3 Labatt, Master & Servant, 2d Ed. Sec. 917. That rule is deeply engrained in federal jurisprudence. Patton v. Texas & P. R. Co., 179 U. S. 658, 664, 45 L. Ed. 361, 364, 21 S. Ct. 275, and cases cited: Kreigh v. Westinghouse, C. K. & Co., 214 U. S. 249, 256, 257, 53 L. Ed. 984, 988, 29 S. Ct. 619; Kenmont Coal Co. v. Patton (C. C. A. 6th) 268 F. 334, 336. As stated by this Court in the Patton Case it is a duty which becomes 'more imperative' as the risk increases. 'Reasonable care becomes then a demand of higher supremacy, and yet in all cases it is a question of the reasonableness of the care—reasonableness depending upon the danger at-

tending the place or the machinery.' 179 U. S. p. 664, 35 L. Ed. 364, 21 S. Ct. 275. It is that rule which obtains under the Employers' Liability Act. See Coal & Coke R. Co. v. Deal (C. C. A. 4th) 231 F. 604; Northwestern P. R. Co. v. Fiedler (C. C. A. 9th) 52 F. 2d 400; Thomson v. Boles (C. C. A. 8th) 123 F. 2d 487; 2 Roberts, Federal Liabilities of Carriers, 2d Ed. Sec. 807. That duty of the carrier is a 'continuing one.' "

 The Federal Employers' Liability Act, as construed by the Supreme Court of the United States, places upon the appellant railroad the duty to exercise reasonable care to provide its workmen with a reasonably safe place to work. Failure so to do is negligence justifying an award of damages under the act.

 The appellant first contends that under the facts of this case the court erred in refusing the requested peremptory instruction, in that no negligence on the part of appellant railroad is shown by the facts. With this we cannot agree. Although the record does not reveal the reason for Coussens' fall into the pit, the evidence abundantly supports the jury's finding that the appellant railroad was negligent in failing to exercise reasonable care to provide Coussens a reasonably safe place in which to work. Beyond question, a fall of eighteen feet ten inches onto a concrete floor is dangerous to life and limb. The likelihood of such a fall taking place was greatly enhanced by the narrowness of the platform upon which deceased was working, coupled with the grease which he necessarily came in contact with during the course of his work. The foreman, McNeely, was present directing the work, and observed the dangerous conditions under which his subordinate, the deceased, was working, and did nothing to alleviate the danger. From the record, it is apparent that all danger from a fall could have been eliminated by the construction of a platform of some type a short distance below the top of the retaining wall upon which the deceased

was working. Nothing in the nature of the coal chute prohibited the temporary erection of such a platform, or the removal of the bucket from the shaft for repairs. Nothing in the record tends to show any reason why safety measures of some nature could not have been taken. The jury apparently believed that a reasonable man would have foreseen danger of a workman falling in the factual situation presented by this case where three men were working on an eighteen-inch wide platform at the very edge of an eighteen foot ten inch precipice with a concrete floor at the bottom, and that the danger was such that the appellant railroad was negligent in failing to take action eliminating the danger from such a fall.

In the Bailey case, supra, the Court stated: ''The nature of the task which Bailey undertook, the hazards which it entailed, the effort which it required, the kind of footing he had, the space in which he could stand, the absence of a guard rail, the height of the bridge above the ground, the fact that the car could have been opened or unloaded near the bridge on level ground—all these were facts and circumstances for the jury to weigh and appraise in determining whether respondent in furnishing Bailey with that particular place in which to perform the task was negligent. The debatable quality of that issue, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness of leaving the question to the jury. The jury is the tribunal under our legal system to decide that type of issue (Tiller v. Atlantic Coast Line R. Co., 318 U. S. 54, ante, 610, 63 S. Ct. 444, 143 A. L. R. 967, supra) as well as issues involving controverted evidence. Jones v. East Tennessee V. & G. R. Co., 128 U. S. 443, 445, 32 L. Ed. 478, 480, 9 S. Ct. 118; Washington & G. R. Co. v. McDade, 135 U. S. 554, 572, 34 L. Ed. 235, 241, 10 S. Ct. 1044. To withdraw such a question from the jury is to usurp its functions. The right to trial by jury is 'a basic and

fundamental feature of our system of federal jurisprudence.' Jacob v. New York, 315 U. S. 752, 86 L. Ed. 1166, 62 S. Ct. 854. It is part and parcel of the remedy afforded railroad workers under the Employers' Liability Act.''

■■■ In the instant case the jury has determined that the appellant railroad was negligent in failing to exercise reasonable care to provide the deceased with a reasonably safe place in which to work, and sufficient facts are in evidence to support such a decision. This is further demonstrated by the numerous photographs of the scene of the accident depicting for the jury the circumstances under which the deceased was working at the time he met his death, as well as the testimony of the expert witnesses who testified in regard to safety measures that should have been taken by the appellant. Under the Federal Employers' Liability Act, it has been held time after time since 1939 that the defendant carrier is entitled to a peremptory instruction only when there is a complete absence of probative facts to support the plaintiff's claim of negligence on the part of the railroad.

■■■ If any such facts exists, under the act, the jury is the sole judge of their sufficiency. The right of a trial by jury and the determination by the jury of the issue of negligence is a substantial part of the rights granted employees under the act. The denial of that substantial right is justified only in cases where no probative facts support the plaintiff's theory of the negligence of the railroad. Lavender v. Kurn, supra. In Wilkerson v. McCarthy, 336 U. S. 53, 93 L. Ed. 497, the Court said:

''Much of respondents' argument here is devoted to the proposition that the Federal Act does not make the railroad an absolute insurer against personal injury damages suffered by its employees. That proposition is correct, since the Act imposes liability only for negligent injuries. Cf. Coray v. Southern P. R. Co., 335 U. S. p.

807, ante, 363, 69 S. Ct. 29. But the issue of negligence is one for juries to determine according to their finding of whether an employer's conduct measures up to what a reasonable and prudent person would have done under the same circumstances. And a jury should hold a master 'liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances,' bearing in mind that 'the standard of care must be commensurate to the dangers of the business.' Tiller v. Atlantic Coast Line R. Co., 318 U. S. 54, 67, 87 L. Ed. 610, 617, 63 S. Ct. 444, 143 A. L. R. 967. . . .

"And peremptory instructions should not be given in negligence cases 'where the facts are in dispute, and the evidence in relation to them is that from which fair-minded men may draw different inferences.' Washington & G. R. Co. v. McDade, 135 U. S. 554, 572, 34 L. Ed. 235, 241, 10 S. Ct. 1044. Such has ever since been the established rule for trial and appellate courts. See Tiller v. Atlantic Coast Line R. Co., 318 U. S. 54, 67, 68, 87 L. Ed. 610, 617, 618, 63 S. Ct. 444, 143 A. L. R. 967."

 The appellant contends that the following portion of one of the instructions was error: "(2) The present cash value of any pecuniary benefits, if any, which you believe from the evidence the plaintiff had a reasonable expectation of receiving from the deceased for which she has been deprived by the death of H. R. Coussens, making adequate allowance, according to the circumstances, for the earning power of money."

This instruction was specifically approved in the case of Weatherbee v. Elgin J. & E. Ry. Co., 191 F. 2d 302, and in Western & A. R. R. Co. v. Hughes, 142 S. E. 185. In 35 Am. Jur., Master and Servant, Section 521, it is stated: ". . . the approved measure of recovery for the present cash value of the future benefits of which the beneficiaries have been deprived by the death, ade-

quate allowance being made, according to the circumstances, for the earning power of money.''

██ ██ We find no merit in appellant's objections to the other instructions. The appellant obtained twenty instructions which presented every phase of its case. The instructions, taken together, furnish a correct guide for the jury.. In Miss. Central R. R. Co. v. Hardy, 88 Miss. 732, 41 So. 505, this Court said: ''Instructions can not be objected to separately with any justice. The instructions must be taken as a whole, as one body, and announce, not the law for the plaintiff or the defendant, but the law of the case, and, so taken, if they reasonably advise the jury of the true principles applicable to the case made by the facts, that is all that is required as a guide for the twelve plain, practical men who sit in the jury box. Any other view would sacrifice substantial justice in a very large percentage of the cases appealed to this Court.''

██ ██ The appellant next contends that the court erred in the admission of certain testimony, the giving of certain instructions, and that the verdict is excessive. We are of the opinion that the court committed no error in admitting in evidence the drawing of the witness Carruth, or his testimony, as well as the testimony of the witness Sherman. Both of these witnesses were licensed, graduate engineers. Both were familiar with the coal chute in question. 3 Wigmore on Evidence, 3rd Ed., Sec. 790, 793; 32 C. J. S., Evidence, Sec. 730. In the case of Gulf Research Development Co. v. Linder, 177 Miss. 123, 170 So. 646, the Court held:

''X-ray pictures, like photographs, maps, and diagrams, when material, are admitted in evidence on authentication which satisfies the court that the thing or person is fairly portrayed by the X-ray. . . . The question is a preliminary one, addressed to the sound discretion of the court.''

██ ██ In the case of King v. King, et al, 161 Miss. 51, 134 So. 827, we said: "The witness involved here had only testified as an expert at one case prior to his examination in this case, but every expert witness must have his first case in which he testifies; it does not depend on whether he has testified before or not, but upon the degree of knowledge and skill of the exceptional nature which he possesses. It is not necessary to introduce a definition of an 'expert.' Sufficient definition will be found in Words and Phrases under the title of 'Expert.' Usually it is sufficient if a witness possesses peculiar knowledge, wisdom, skill, or information regarding the subject-matter under consideration, which is acquired by study, investigation, observation, practice, or experience, and is not likely to be possessed by the ordinary layman or any inexperienced person or one who is incapable of understanding the subject without the aid or opinion of some person who possesses such knowledge or experience." See also 32 C. J. S., Evidence, Sec. 458, and Meridian Star v. Kay, 211 Miss. 536, 52 So. 2d 35.

██ ██ It is also contended that the verdict was grossly excessive. The appellee was 52 years of age, and was the sole dependent of the deceased. She was a housewife and had no other income. The deceased was 54 years of age; his income for the year 1951 was $3,803.07; his life expectancy was 18.48 years. According to the doctor's testimony, which is not disputed, the deceased's injuries consisted of laceration of the elbow, through the skin and tissues to the bone, multiple fracture of the pelvis, and other internal injuries; that in his opinion, the deceased died of a ruptured liver; that he suffered to such an extent that he had to be given narcotics to relieve him. Taking into consideration the age of the deceased, his life expectancy, the nature and extent of his injuries, his pain and suffering, and evidence of his wife's expectancy of contributions from him had he lived,

it is our conclusion that the verdict of the jury is not excessive.

It follows that the judgment of the court below must be and it is affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Gillespie, JJ.,* concur.