SMITH, Justice:
Mississippi Export Railroad Company, an interstate common carrier, has appealed from a judgment of the Circuit Court of Jackson County for $100,000 recovered against it by appellee, Donald Ray Dubose. The action was brought by Dubose under the Federal Employers’ Liability Act, 45 U.S.C.A. sections 51-56 (1954), for the recovery of damages for personal injuries sustained while in appellant’s employ and as the result of its negligence.
Evidence adduced at the trial warranted a jury finding that, while employed by appellant as a section laborer and in the course of the performance of his duties, Dubose twice injured his back, the last injury requiring major surgery. The declaration alleged that the injuries proximately resulted from appellant’s negligence, and it is admitted that the action was properly brought under the provisions of the Federal Employer’s Liability Act, supra.
The refusal of the trial court to grant appellant’s motion for an instruction peremptorily directing the jury to return a verdict in its favor is assigned as error. In considering that contention, the evidence which supports appellee’s theory of the case and all reasonable inferences to be drawn from it favorable to that theory, will be accepted as true. In brief, and upon that basis, the evidence was sufficient to support a finding by the jury that Dubose first injured his back while working for appellant on July 20, 1966 when, as one of an eight man crew, he was assisting in lifting and loading a steel rail. The rail was some 39 feet in length and weighed approximately 1,170 pounds. At that time he informed appellant’s track supervisor that he had hurt his back and was told to see a doctor. He consulted a doctor and was given some conservative treatment following this episode. He returned to work and on August 10, 1966, was assigned duty as one of a six man crew which was directed to load a “switching frog” onto a “push car.” The frog weighed 1,575 pounds.
The method employed by appellant in loading the frog upon the car was that one end of it would be lifted upon the push car, two of the six man crew would then get up on the car and pull while the remaining four lifted and pushed. Dubose was one of the four assigned the duty of lifting and pushing. When the foreman or supervisor in charge directed Dubose and his fellows to proceed with this latter phase of the loading operation, Dubose protested and reminded him of the injured condition of his back. His protest was rejected, however, and Dubose and his three companions were told by appellant’s foreman or supervisor “We have to get it loaded. Let’s load it.” This language was sufficient to constitute an order to Dubose and his fellow crewmen to lift and load the frog.
The witnesses were not in complete agreement as to the details of what then ensued. However, as he sought to lift the frog, Dubose again injured his back, this time so seriously that surgery was eventually required.
Testimony upon the question as to what number of men should be assigned or were necessary to load the frog safely varied, according to the several witnesses, from four to twelve. It was sufficient to support a jury finding that appellant had negligently failed in its duty to provide Dubose with a sufficient number of fellow crewmen to load the frog safely by the *715 method employed and that this negligence was a proximate cause of the injuries.
The conclusion that the evidence was sufficient to withstand appellant’s request for a directed verdict is supported by the provisions of the Federal Employers’ Liability Act, supra, itself and the decisions which have construed it. On this point, of the many decisions in which the question has been considered, it is necessary here to cite only two.
In Illinois Central Railroad Company v. Coussens, 223 Miss. 103, 117-118, 77 So.2d 818, 822-823 (1955) it is stated:
Under the Federal Employers’ Liability Act, it has been held time after time since 1939 that the defendant carrier is entitled to a peremptory instruction only when there is a complete absence of probative facts to support the plaintiff’s claim of negligence on the part of the railroad.
If any such facts exist, under the act, the jury is the sole judge of their sufficiency. The right of a trial by jury and the determination by the jury of the issue of negligence is a substantial part of the rights granted employees under the act. The denial of that substantial right is justified only in cases where no probative facts support the plaintiff’s theory of negligence of the railroad. Lavender v. Kurn, supra [327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916], In Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 417, 93 L.Ed. 497, the Court said:
“Much of respondents’ argument here is devoted to the proposition that the Federal Act does not make the railroad an absolute insurer against personal injury damages suffered by its employees. That proposition is correct, since the Act imposes liability only for negligent injuries. Cf. Coray v. Southern P. R. Co., 335 U.S. 520, 69 S.Ct. 275 [93 L.Ed. 208], But the issue of negligence is one for juries to determine according to their finding of whether an employer’s conduct measures up to what a reasonable and prudent person would have done under the same circumstances. And a jury should hold a master ‘liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances’, bearing in mind that ‘the standard of care must be commensurate to the dangers of the business.’ Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610 [617], 143 A.L.R. 967. * * *
“And peremptory instructions should not be given in negligence cases ‘where the facts are in dispute, and the evidence in relation to them is that from which fair minded men may draw different inferences.’ Washington & G. R. Co. v. McDade, 135 U.S. 554, 572, 10 S.Ct. 1044, 1049, 34 L.Ed. 235 [241].”
In the case of Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 506-508, 510, 77 S.Ct. 443, 448-451, 1 L.Ed.2d 493, 499-502 (1957), rehearing denied 353 U.S. 943, 77 S.Ct. 808, 1 L.Ed.2d 764 (1957), the Court made the following comments regarding the degree of proof required to sustain a jury verdict.
Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due “in whole or in part” to its negligence. (Emphasis added.)
The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely *716 presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference.

The decisions of this Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors can not honestly differ whether fault of the employer played any part in the employee’s injury.
After a careful review of the record and consideration of the above and other authorities we have concluded that the trial court correctly denied appellant’s motion for a directed verdict and its request that the jury be peremptorily instructed to return a verdict in its favor.
Of the remaining assignments of error, only one merits further discussion: it is contended that the amount of the verdict was so grossly excessive as to evince passion or prejudice on the part of the jury.
There was little, if any, dispute in the evidence upon the question of damages.
Dubose was 26 years of age, married, with two children, and had a life expectancy of 44.5 years. He was employed by appellant as a relief foreman, machine operator and section crew worker, with duties involving manual labor. Other experience or training consisted of about 3 years of office or clerical work in the Air Force. Dubose and his wife testified as to his condition before and after his injury and subsequent surgery. They also testified as to the attendant pain and disabilities suffered by Dubose. There was evidence of hospital and medical expenses approximating $2,000 and wage losses amounting to slightly less than $7,500.
The only medical evidence in the record was given by Dr. Holder, an orthopedic surgeon.
Dr. Holder first saw Dubose on April 10, 1967. Dubose gave a history of pain and discomfort following the incidents of July 20 and August 10, 1966, and of certain conservative back treatment at the hands of a Dr. Enger.
Dr. Holder’s own examination revealed that appellee suffered from a congenital back defect, his x-rays disclosing a strong indication at the L-5 level of the back condition known as “spondylolysis.” Dr. Holder identified this as an incomplete fusion of the bone of the posterior elements of the vertebrae. In describing it he stated, “ * * * on the posterior elements of the vertebrae, there is not complete fusion of bone and it lends (sic) greatly toward an instability of the area.”
Dr. Holder said further:
Because of his continued disability over a long period of time, it was getting to be almost a year, because of his x-ray indications of a spondylolysis, which I have just described, making for instability, with a slight indication of his myelogram of some trouble, and considerable clinical indication of some trouble, I advised that he have an exploration on the lumbar spine.
Surgery disclosed a moderate disc protrusion at the L-5 level. The L-4 inter-space was also inspected and found to be normal and the disc was not removed at that level.
A laminectomy was performed and a bone fusion effected. Dr. Holder testified that:
At the time of surgery we confirmed our diagnosis of spondylolysis in that this posterior portion of L-5 was real loose and movable and unstable, which *717 was the main reason that we thought that we needed to place a graft across it.
Without attempting to detail the medical testimony further, its substance was that Dubose suffered from a congenital back defect and that the injuries received on July 20 and August 10, 1966, “contributed” to the back condition found to exist when he underwent surgery. Dubose had reached maximum medical recovery at the time of trial. And,. again according to Dr. Holder, fusion of the bone had made his back more stable and “perhaps stronger in that area.” It was Dr. Holder’s opinion that appellee would require no further surgery and was able to work, but should be “restricted” as to work demanding “heavy activity” or requiring “great stress” in the low back region.
We have concluded that the amount of the verdict in this case, on the evidence, was grossly excessive and must be said to “evince passion or prejudice” on the part of the jury. This ancient phraseology means simply that, in fixing the amount, the jury was unduly influenced by emotional factors, either of sympathy for Du-bose or prejudice against the railroad or both, and did not restrict itself to the evidence or take into consideration undisputed evidence. While every verdict inevitably is affected by human emotions, of which every juror has his quota, emotional factors should never be allowed unduly to influence the jury to return a verdict substantially larger than warranted by evidence. It is our opinion that the amount of the verdict here substantially exceeds that warranted by the evidence and must be regarded, as to amount, as being the product of passion or prejudice. Therefore, if the appellee shall, within fifteen days after the judgment entered upon this appeal becomes final, enter a remittitur in the amount of $15,000, the judgment will be affirmed in the sum of $85,000. Otherwise, the judgment as to liability will be affirmed and the case remanded for a new trial upon the issue of damages alone.
Affirmed upon condition of remittitur; otherwise reversed and remanded for a new trial upon the issue of damages alone.
GILLESPIE, P. J., and PATTERSON, INZER and ROBERTSON, JJ., concur.