520 So.2d 479 (1987)
SEABOARD SYSTEMS Railroad, INC.
v.
Eugene Benjamin CANTRELL, Jr.
No. 56949.
Supreme Court of Mississippi.
September 30, 1987.
As Modified on Denial of Rehearing February 10, 1988.
Raymond L. Brown, Brown & Associates, Pascagoula, for appellant.
C.E. Sorey, II, Ramsey, Andrews, Sorey & Ramsey, Vicksburg, for appellee.
EN BANC.
PRATHER, Justice, for the Court:

ON PETITION FOR REHEARING
The failure of the trial judge to give a nontaxability instruction in a Federal Employers' Liability Act case is the central issue in this appeal. Eugene Benjamin Cantrell, Jr., a Louisiana resident, brought suit in the Circuit Court, Jackson County, Mississippi in August 1984, against the Seaboard Systems Railroad, Inc., for injuries *480 based on the Federal Employers' Liability Act, (FELA) 45 U.S.C. § 51-56. This act provides concurrent jurisdiction in state and federal courts. Cantrell was awarded a jury verdict of $650,000, from which judgment the Seaboard System Railroad (hereinafter Railroad) appeals alleging:
(1) The trial court erred in requiring the Railroad, on motion of Cantrell during the trial, to produce a statement of a non-party witness whose statement had not been sought by pretrial discovery or subpoena.
(2) The trial court erred in granting plaintiff's instruction which not only said that "negligence" has a liberal interpretation in F.E.L.A. cases, but also said that negligence "includes any breach of any obligation that the railroad owes to its employees, including the obligation of seeing to the safety of its employees." (Emphasis added)
(3) The trial court erred in allowing plaintiff's economist to testify concerning present and future loss of income using hypothetical questions in which (1) plaintiff was totally and permanently disabled, and in which (2) plaintiff could earn only minimum wage, where there was no testimony in the record of wage earning capacity or of total disability.
(4) The trial court erred in granting an instruction which permitted recovery (1) for "loss of or diminution of earnings or impairment of earning capacity or power" even though the only testimony was of physical limitations, not earning capacity, and (2) for "hospitalization, medical services, and drugs and surgical appliances, and all related expenses" past and future, absent evidence of any past or anticipated expenditures for any such items.
(5) The trial court erred in refusing the Railroad's requested instruction that an award in this case "will not be subject to any income taxes, and you should not consider such taxes in fixing the amount of your award."
(6) The verdict was so excessive as to show bias, passion and prejudice on the part of the jury; it ignored appellee's contributory negligence and failure to mitigate damages.

FACTS
Eugene Benjamin Cantrell, Jr. (hereinafter Cantrell), a thirty year old, seven year employee of the railroad, was working as a flagman on the switching crew on the morning of November 13, 1983. He was helping at the rear, making up a train to take out to the main line. At approximately 3:45 to 4:00 a.m., he boarded the rear of the caboose car which was going to be repaired. The train had slowed to two to three miles per hour, to allow him and the foreman to board the train. He was given a radio with only a single channel; therefore, he had to signal with a lantern to the foreman who radioed the engineer to move the train forward and take out the slack.
Each employee is trained and tested on the rules of the railroad. Slack action occurs with every train movement, starting, stopping, slowing, and speeding up. Grab irons are located at the back and inside the caboose, and when alighting from locomotives or cars, all employees are required by railroad rules to keep a firm hand hold until sure of secure footing. The rules further require that crewmen be prepared at all times to avoid injury from unexpected slack action.
According to the operating rules, Cantrell was responsible for having a proper radio. If he was not issued a proper radio, it was his responsibility to exchange it, and he was to test and verify his ability to communicate on it before movement of the train.
As Cantrell went up the steps of the caboose and took a step inside the door, the slack action of the train threw him to the floor against the grate at the back of the caboose. Cantrell testified the accident occurred because he was not prepared for the unexpected slack action.[1]
*481 To explain his accident, Caldwell stated that he was not able to reach the grab iron; that the caboose inside flooring and everything were wet as if it had just been washed down and that the slack action was severe throwing him flying backward, and causing injury to his neck, head, and low back.
Cantrell was aware that the steps, rail and deck of the caboose were wet and slippery as evidenced by Cantrell's warning to the foreman before he boarded by saying, "Mike, it's slick, watch it." Both Cantrell and the foreman testified that Cantrell was thrown off of his feet.
By experience, Cantrell knew the slack action was coming. The foreman, fifteen to thirty feet from Cantrell, testified he called to Cantrell to tell him he was going to instruct the engineer to go ahead and take out the slack. Cantrell himself had signalled to the foreman with the lantern to go ahead with the train. The only eyewitness said the slack was sharp, not unusually hard; but different.
Cantrell's complaints at the time of the fall in November, 1983, were of pain in his neck and shoulder. By December, 1984 Cantrell's major complaint was his back, and a disc problem was then suspected at L4-L5. Dr. Lewellyn asked Cantrell to return in January, 1985 for studies and tests to determine whether surgery would help his back, but Cantrell cancelled the appointment because of his fear of being crippled as other family members.
The doctor cautioned that, with or without operative procedures, Cantrell should not return to employment that required jumping, climbing or repetitive lifting of 25 pounds or more. The doctor has not released Cantrell to return to work. The doctor said that if tests and studies showed an irreparable disc rupture, Cantrell could be treated medically and, with or without operative procedures, he would have an eight out of ten chance of becoming 85% comfortable, doing 85% of day to day activities. Without the recommended tests, the doctor did not know the extent of Cantrell's disc injury. The doctor would not recommend surgery unless tests indicated it would improve the patient.
Citing the causes of his accident to be the Railroad's failure to provide safe equipment and a safe place to work, together with negligent operation of the locomotive, Cantrell sued for two million dollars loss for past and future wages, earning capacity, physical disability, pain and suffering, and medical and rehabilitative expenses. The jury returned $650,000.00 for actual and compensatory damages.

I.

DID THE TRIAL COURT ERR IN REQUIRING APPELLANT, ON MOTION OF APPELLEE DURING TRIAL, TO PRODUCE A STATEMENT OF A NON-PARTY WITNESS WHOSE STATEMENT HAD NOT BEEN SOUGHT BY PRETRIAL DISCOVERY OR SUBPOENAE?
During a noon recess following the first portion of direct examination of Eugene Cantrell, counsel for plaintiff Cantrell made a motion to require that attorneys for Seaboard produce a recorded statement of the foreman, Mike Flinn, a witness for the plaintiff. The statement was recorded by a claims agent for Seaboard, and the statement was not transcribed until a week before trial. Mike Flinn never saw a copy of his statement, nor did he acknowledge by signature that the statement was his.
Plaintiff's motion was predicated on Miss.R.Civ.P. 26(b)(3), which states:
Subject to the provisions of subsection (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials *482 by other means. In ordering discovery of such materials when the required showing has been made, the Court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning litigation.
A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order.
Counsel for Seaboard argued that counsel for plaintiff had made no effort prior to trial to obtain the statement and that requiring production of the statement at trial would take away an impeachment tool since the prospective witness, upon reading the statement, would be able to adjust his testimony accordingly. After taking the motion under advisement, the lower court ruled that Seaboard was required to produce the statement.
The written statement of Flinn and his subsequent testimony at trial were substantially the same. Any variance in choice of words did not significantly prejudice the Railroad as an impeachment tool. The trial court held that the required production of the written statement would be in keeping with the spirit of discovery rules. This Court holds that there was no error in the trial court's ruling on this motion. Therefore, the assignment of error has no merit.

II.
Did the trial court err in granting an instruction, which not only said that "negligence" has a liberal interpretation in F.E.L.A. cases, but also said that negligence "includes any breach of any obligation that the railroad owes to its employees, including the obligation of seeing to the safety of its employees." (Emphasis added)
The appellant's contention is that this instruction makes the railroad an insurer of the safety of its employees, contrary to law. The full text of the instruction reads as follows:
The obligation of a railroad under the Federal Employers Liability Act for the safety of its employees is substantially greater than that of an ordinary employer to its employee. The word "negligence", therefore, as used in the Federal Employers Liability Act, which makes the railroad liable for its employees for its negligence, must be given a liberal interpretation. It includes any breach of any obligation that the railroad owes to its employees, including the obligation of seeing to the safety of its employees.
Under the Federal Employers Liability Act, if the railroad committed some act of omission that played any part, no matter how small, in actually bringing about or causing injury to the plaintiff, then you should find that the railroad was negligent.
"Negligence under the Federal Employers Liability Act may consist of a failure to comply with a duty required by law. As I earlier charged you, railroads have a legal duty to provide their employees with a reasonably safe place in which to work. If you find in this case that the plaintiff was injured because the railroad failed to furnish him a reasonably safe place to work, then you may find the railroad was negligent."
Seaboard contends citing Atlantic Coast Line Railroad v. Dixon, 189 F.2d 525 (5th Cir.1951) and Shenker v. Baltimore & Ohio Railroad Co., 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963) that F.E.L.A. does not make an employer an insurer of an employee's safety while on duty. See also Illinois Central Railroad Co. v. Coussens, 223 Miss. 103, 117-118, 77 So.2d 818 (1955). However, as cited by Cantrell, while the injured employee must prove negligence in order to recover under F.E.L.A., the railroad does have "[a] non delegable duty to provide its employees with a safe place to work ..." Nivens v. St. Louis Southwestern Railway Co., 425 F.2d 114 (5th Cir.1970); Shenker v. Baltimore & Ohio Railroad Co., supra.
*483 As to the standard required to recover under a negligence action, Cantrell cites Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), which stated:
Under [F.E.L.A.], the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, or bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due "in whole or in part" to its negligence.
The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference.
352 U.S. at 506-508, 77 S.Ct. at 449, 1 L.Ed.2d at 499-500. Accord, Nivens v. St. Louis Southwestern Railway Co., 425 F.2d 114 (5th Cir.1970). See also Springborn v. American Commercial Barge Lines, Inc., 767 F.2d 89, 98 (5th Cir.1985) and Mississippi Export Railroad Co. v. Dubose, 221 So.2d 713 (Miss. 1969).
There is no proof to show that the jury inferred from the jury instruction P-8 that the railroad is an insurer of the safety of its employees. The jury may very well have interpreted the instruction to comply with the fact that the railroad does have an obligation to provide its employee a safe place to work. Testimony of Mike Flinn and Cantrell support the plaintiff's theory that the slack action may have been caused by the negligence of other employees on the railroad. Consequently the jury was justified in concluding that the origin of the negligent act was attributed, in whole or in part, to the railroad itself. This Court holds that the jury instruction was proper in this case.
It appears that there being no other assignment of error relating to the liability issue of this appeal, the Court now addresses the issues concerning the awarding of damages.

III.
Relating to the award of damages the appellant assigns several errors regarding the granting or refusal of jury instructions.

A.
Did the trial court err in refusing the appellant's instruction that an award in this case "will not be subject to any income taxes, and you should not consider such taxes in fixing the amount of your award?"
The appellant's refused instruction read as follows:
The court instructs the jury that if you find, from a preponderance of the evidence, that plaintiff is entitled an award in this case, the award will not be subject to any income taxes, and you should not consider such taxes in fixing the amount of your award.
*484 Under § 104(a)(2) of the Internal Revenue Code of 1954, 26 U.S.C.S. § 104(a)(2) (1984), damages awarded as compensation for personal injury are not included in the gross income of the recipient, and are therefore not subject to income taxation. The question of whether it was error to refuse an instruction as to nontaxability of an award for economic loss in FELA cases is a matter governed by federal law, even though the action is brought in state courts. Norfolk & Western Railway Co. v. Liepelt, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980).
As this case on the damage question is controlled by federal law, this Court looks to the federal mandates. In Norfolk And Western Railway Co. v. Liepelt, supra, the United States Supreme Court ruled that it was error in an F.E.L.A. case to refuse a requested instruction to inform the jury that a money judgment would be nontaxable. In that case in the lower court an expert witness computed the amount of pecuniary loss at $302,000 plus the value and care and training that decedent would have provided to his young children absent his death; the jury awarded damages of $775,000. The Supreme Court stated:
It is surely not fanciful to suppose that the jury erroneously believed that a large portion of the award would be payable to the Federal Government in taxes and that therefore it improperly inflated the recovery. Whether or not this speculation is accurate, we agree with petitioner that, as Judge Ely wrote for the Ninth Circuit.
"[t]o put the matter simply, giving the instruction can do no harm, and it can certainly help by preventing the jury from inflating the award and thus overcompensating the plaintiff on the basis of an erroneous assumption that the judgment will be taxable." Burlington Northern, Inc. v. Boxberger, 529 F.2d 284, 297 (1975).
We hold that it was error to refuse the requested instruction in this case. That instruction was brief and could be easily understood. It would not complicate the trial by making additional qualifying or supplemental instructions necessary. It would not be prejudicial to either party, but would merely eliminate an area of doubt or speculation that might have an improper impact on the computation of the amount of damages.
444 U.S. at 497-498, 100 S.Ct. at 759-60, 62 L.Ed.2d at 696.
Cantrell argues that amounts to which the economist testified were reduced by the estimated amount to be paid for income tax and that, the jury was properly informed without reference to the Liepelt instruction. Cantrell cites Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983) and Culver v. Slater Boat Co., et al., 722 F.2d 114 (5th.Cir.1983) as authority to indicate the accepted methods to calculate an appropriate award for lost earnings. However, each case is predominantly concerned with the effects of inflation and neither case speaks definitively as to the propriety of a so-called tax instruction to the jury.
Cantrell asserts that it is no longer necessary to require the jury to be instructed that the award is not subject to taxation since the jury has already been told by the economist's testimony the amount of taxes that have been taken out. Appellee argues that to require a jury's instruction on top of the requirement mandated by the courts in Pfeifer, supra and Culver, supra, that the award is not subject to taxes would no longer serve a useful purpose, but could and would mislead the jury into thinking that they must reduce the award for damages for taxes.
Liepelt does set forth authority to show that the failure to give such an instruction is error in a case where the jury might inflate the figure to compensate the plaintiff for taxes. From the Eighth Circuit, analyzing Liepelt, this Court notes the decision of Flanigan v. Burlington Northern Inc., 632 F.2d 880 (8th Cir.1980), which recognized that the U.S. Supreme Court had ruled that the failure to give the cautionary instruction on nontaxability of the award was error, but that it was only prejudicial if it adversely affected the substantive rights of the complaining party. In *485 Flanigan, the Eighth Circuit held that the defendant had failed to point out any evidence that the jury inflated its award on the erroneous belief that the award would be taxable. Consequently, the Eighth Circuit held that the failure to give the instruction on taxation was harmless error.
On the contrary, in the instant case, the Railroad argues that the jury award of $650,000.00 was inflated over the economist's estimate of $394,993.00 as loss of income and fringe benefits. To counter this argument, the appellee claims that an additional $200,000.00 for pain and suffering does not shock one's conscience. In today's tax-conscious society this Court cannot say that the additional award of $200,000.00 was based upon the misconceived notion that any award would be taxable or was for the plaintiff's pain and suffering.
Although this Court does not have a specific case as to the appropriateness of a nontaxability instruction, this Court does have cases that outline the principles to guide a trial judge when considering submitted instructions. Those guidelines include the furnishing of compensation for injuries received; however, the court's instructions should include elements that advise the jury of the present value of an award. Jesco, Inc. v. Whitehead, 451 So.2d 706 (Miss. 1984). Cf. Sheffield v. Sheffield, 405 So.2d 1314 (Miss. 1981).
By analogy to cases dealing with elements to be considered in the awarding of damages, the granting of the nontaxability instruction comports with the Mississippi guidelines and goals.
Therefore, this Court holds that the failure to grant the Railroad's requested instruction as mandated by Liepelt and in conjunction with Mississippi precedents, was reversible error regarding the award of damages. This Court, therefore, affirms the case on the issue of liability, but reverses and remands the case for a new trial on the issue of damages.
Regarding the issue of damages, plaintiff's contributory negligence was an issue in the first trial, and on re-trial, the jury may consider plaintiff's contributory negligence, if any, and may reduce the amount of damages proportionately. FELA, 45 U.S.C.A. section 53. Index Drilling Co. v. Williams, 242 Miss. 775, 137 So.2d 525 (1962) at page 531. 3 Devitt & Blackmar, Federal Jury Practice & Instructions § 94.16 (3d ed. 1977). The above instruction, together with the instruction regarding the liberal interpretation of the term "negligence" when describing the railroad's duty in FELA cases, will fairly instruct the jury. In effect, a new trial will be necessary.

IV.
It is not necessary for this Court to discuss the other assignments of error as they relate to other instructions that may not reoccur on retrial.
Since this action is one under the FELA, this Court suggests the following as a guideline for the new trial on damages, which guideline is set forth in an opinion of a divided court from the Fifth Circuit Court of Appeals, as follows:
[I]n the absence of a stipulation by the parties concerning the method to be used, fact-finders shall determine and apply an appropriate below-market discount rate as the sole method to adjust loss-of-future-earnings awards to present value to account for the effect of inflation. While expert testimony and jury instructions must be based on this method, juries may be instructed either to return a general verdict or to answer special interrogatories concerning the computation of damages.
I.
The calculation of damages suffered either by a person whose personal injuries will result in extended future disability or by the representatives of a deceased person involves four steps: estimating the loss of work life resulting from the injury or death, calculating the lost income stream, computing the total damage, and discounting that amount to its present value.

*486 In Pfeifer the Court recognized, as we did in Culver I, that calculation of the lost income stream begins with the gross earnings of the injured party at the time of injury. To this amount other income incidental to work, such as fringe benefits, should be added. From it, the fact-finder should subtract amounts the wage earner would have been required to pay, such as income tax and work expenses.
Even in a non-inflationary economy, earnings of a worker "tend to inflate" from the operation of a number of factors, "some linked to the specific individual and some linked to broader societal forces." The operation of both kinds of influences should be considered to reach the first stage in calculating an appropriate award, an estimate of what the lost stream of income would have been "as a series of after-tax payments, one in each year of the worker's expected remaining career."
... .
Inflation, which has been a permanent fixture in our economy for many decades, affects both the income stream and the market interest rate. In this opinion, we consider only the method of taking general economic inflation into account. In accomplishing this, as we said in Culver I, "[t]he goal is not .. . to protect the lump-sum award from the effect of inflation." It is, instead, "to assure the plaintiff the equivalent of the total of all of his future wages," including those earnings likely to be affected by inflation.
As the Court noted in Pfeifer, three methods are available for adjusting damage awards to account for the effect of inflation... .
In the below-market-discount method, the fact-finder does not attempt to predict the wage increases the particular plaintiff would have received as a result of price inflation. Instead, the trier of fact estimates the wage increases the plaintiff would have received each year as a result of all factors other than inflation. The resulting income stream is discounted by a below-market discount rate. This discount rate represents the estimated market interest rate, adjusted for the effect of any income tax, and then offset by the estimated rate of general future price inflation.
... .
The inherent inaccuracy of specific forecasts of future inflation, coupled with the length and complexity of the proceedings necessary to engage in such forecasts, convinced the Supreme Court that the case-by-case method of adjusting damage awards for inflation "should be discouraged." "[S]ince specific forecasts of future price inflation remain too unreliable to be useful in many cases, it will normally be a costly and ultimately unproductive waste of [plaintiffs'] resources to make such forecasts the centerpiece" of accident litigation. Recognizing the Court's disapproval of the case-by-case method, we hold that it should not be used in [the Fifth] circuit to adjust damage awards for inflation.
... .
Even establishing an appropriate below-market discount rate, however, is difficult... . However, while the studies find that the real rate varies, estimates uniformly fix its amount over any fairly lengthy period as falling into a range that runs from three percent to a negative rate of -1.5%.
We hold that fact-finders in [the Fifth] Circuit must adjust damage awards to account for inflation according to the below-market discount rate method. The parties may, if they wish, stipulate the below-market discount rate, as they may stipulate any other disputed issue. If they are unable to do so, they may introduce expert opinion concerning the appropriate rate. Other evidence about the effect of price inflation is inadmissible. Evidence about the likelihood that the earnings of an injured worker would increase due to personal merit, increased experience and other individual and societal factors continue, of course, to be admissible ...

*487 As we have noted, the discount rate may be affected by the fact-finder's assumption about the type of investment the plaintiff will choose ... However, the fact-finder should not consider the plaintiff's possible need for emergency funds as a factor in favor of short-term investments; the injured wage-earner should have no greater right to a resource against future emergencies than he would have had if he had continued to work.
In judge-tried cases, a trial court adopting a pre-tax discount rate between one and three percent will not be reversed if it explains the reasons for its choice. This guideline, however, goes only to the reasonableness of the correlation between the pre-tax market rate of interest and the inflation rate. As discussed above, this pre-tax discount rate must then be adjusted for tax effects. If supported by appropriate expert opinion, the trial judge might make no discount or even adopt a negative rate not to exceed -1.5% before adjusting for tax effects. In jury trials, the jury should be instructed in the usual fashion concerning the weight to be given expert opinion evidence. The jury may then be permitted to return a single-figure award for damages or it may be required to answer interrogatories stating, among other items, the amount of loss of future earnings for each year for which it makes an award, and the discount rate it chooses to apply. The court will then be able to compute the total award or to require the parties to complete the arithmetic.
Culver v. Slater Boat Co., 722 F.2d 114, 117, 118, 120, 121-122 (5th Cir.1983), (footnotes omitted).
AFFIRMED AS TO LIABILITY; REVERSED AS TO DAMAGES AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.
ANDERSON, J., and DAN M. LEE, P.J., dissent.
ANDERSON, Justice, dissenting:
I dissent. I do not think that the failure to grant a requested instruction is reversible error.
I would affirm on the issue of damages.
DAN M. LEE, P.J., joins this dissent.
NOTES
[1] Slack action of a train occurs when the switch engine, without hooking the brakes, pulls the cars ahead causing a bumping reaction with each car, and vice versa, as a train slows down, the same reaction occurs.