BERNARD FERAK, Special Admr. of the Estate of MICHAEL FERAK, Deceased, Plaintiff-Appellee, Cross-Appellant, v. ELGIN, JOLIET & EASTERN RAILWAY COMPANY, Defendant-Appellant, Cross-Appellee.

(No. 55370;

First District—December 1, 1972.

Harlan L. Hackbert, of Chicago, (Hackbert, Rooks, Pitts, Fullagar and Poust, of counsel,) for appellant.

Philip E. Howard and Jerome H. Torshen, Ltd., both of Chicago, (Jerome H. Torshen and Robert F. Berrey, of counsel,) for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Decedent brought this action under paragraph 1 of the Federal Employer's Liability Act. (45 U.S.C. par. 51, *et seq.*) He died prior to trial and his son, as special administrator of his estate, was substituted as plaintiff. This cause proceeded to trial before a jury and a verdict in the amount of $75,000 was rendered in favor of plaintiff. On appeal defendant contends: (1) the cause of action for personal injuries to decedent did not survive to his adult non-dependent son; (2) the survival action was barred by failure of plaintiff to make a timely request for substitution; (3) the medical evidence will not sustain the verdict; (4)

the trial court improperly allowed plaintiff to amend his complaint by adding allegations of negligence; and (5) the court improperly refused defendant's instruction relating to its duty of care. Plaintiff has withdrawn his cross-appeal.

Decedent was a man of about 60 years of age. He had worked for many years as a railroad yard worker and was physically well suited for such employment. His co-workers described him as being muscular, pleasant, healthy, active and a hard worker who never missed a day on the job. And so it was that he went to work his evening shift on December 12, 1961. The weather on the previous days had produced alternate periods of snow, thaw and freeze resulting in very slippery conditions in the railroad yard on that evening. Although defendant made it a practice to spread salt and abrasive materials on the area around the "leads," the area in which decedent worked was not so cared for. As Harry Carnegie, one of decedent's co-workers, watched from inside a shanty, defendant walked in his normal manner through a very slippery part of the railroad yard. He carried the standard yardman's equipment. Suddenly decedent lost his footing and fell on his back. Carnegie went to decedent's aid and helped him to his feet. Decedent said he was "all right" and the two stood together for a few minutes until the train to which Carnegie was assigned came by and he left. As he left, however, he noticed that decedent was walking unusually "tilted" as if he was hurt. A short time later, Carnegie again saw decedent lying on the icy ground but this time his work demands kept him from helping. Instead, Carnegie immediately informed Mike Capella, a foreman, who went to decedent's aid. When Capella reached the scene, decedent asked to be helped up. He rose to his feet but again fell and Capella had to carry him to a shanty.

Once at the shanty, decedent sat slumped at a table and mumbled incoherently. He also seemed to have lost the use of his left shoulder and arm. He was taken by ambulance to the hospital where he was treated by defendant's industrial physician and then by a neurosurgeon. Both of these doctors testified at trial and their testimony will be dealt with in detail later. Death came on May 6, 1965 and decedent is survived by his 39 year old non-dependent son.

■■ Defendant contends that a cause of action which arises under paragraph 1 of the Act does not survive under paragraph 9. Paragraph 1 provides that in case of the wrongful death of such employee a cause of action accrues "to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee * * *." Paragraph 9 provides:

"Any right of action given by this chapter to a person suffering

injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury."

It is apparent that the operative language of both sections which is relevant to the instant case is identical. Our Supreme Court has, however, in *Jensen v. Elgin, Joliet and Eastern Ry. Co.* (1962), 24 Ill.2d 383, 385-386, 182 N.E.2d 211, 213, held that these sections, although identical in language, are different in meaning and effect. The court, in holding opposite to the position advanced by defendant in the instant case stated:

"The basis of liability for an action which survives under section 9 is, on the other hand, the wrong to the injured employee and the measure of damages is his personal loss and suffering before he died (ST. LOUIS IRON MOUNTAIN & SOUTHERN RAILWAY v. CRAFT, 237 U.S. 648, 59 L.ed 1160.) Thus, the basis of liability and measure of damages that may operate to prevent some children from recovering under the wrongful death provisions of section 1 are not present in an action which survives under section 9. We are of the opinion that the word 'children' has its ordinary dictionary meaning in both sections 1 and 9. The Appellate Court by construing the word 'children' to mean 'minor dependent children' unnecessarily placed a restriction on beneficiaries clearly designated in section 9, a restriction which exists under section 1 only because of the inherent nature of a wrongful death action."

Defendant, however, urges that under both paragraphs 1 and 9 "children" must be "dependent" upon the deceased employee as a prerequisite to recovery. Defendant implies in its argument that the term "next of kin" is generic and refers back to the other terms of relationship and that the use of the term "dependent" modifies "next of kin" and has the like effect of referring the modification to the other terms of relationship. In support of this theory, defendant cites *Auld v. Terminal R.R. Assn. of St. Louis* (Mo. 1970), 463 S.W.2d 297 *cert.* denied (1971), 401 U.S. 940, which it contends is a better reasoned view. That case involved an action brought under paragraph 1 of the F.E.L.A. for the benefit of two sisters and a brother of deceased, none of whom were dependent upon him. The court held that the word "dependent" had the same meaning in both paragraph 1 and 9, and that dependency must be shown in order for "next of kin dependent upon such employee" to recover. In so holding the court stated at 463 S.W.2d 299:

"Plaintiff contends that she is entitled to recover because there are two separate claims for relief that arise in a death case under F.E.L.A., one for wrongful death and the other for the conscious pain and suffering of deceased; that the former requires pecuniary loss on the part of the beneficiaries but that the measure of damages for the latter is that which decedent would have recovered had he not died and therefore there need not be a showing of any pecuniary loss to the beneficiaries. We agree that there are two separate claims in this sort of action and that the claim under § 59 is for damages arising prior to the death of decedent. St. Louis, Iron Mountain & Southern Ry. Co. v. Craft, 237 U.S. 648, 35 S.Ct. 704, 59 L.ed. 1160. However, we do not see that the difference in the measure of damages in the two sections has any effect on the intention of Congress in its use of the word 'dependent' as a condition for recovery by the next of kin. It is our view that the word 'dependent' in each section has the same meaning."

We cannot be persuaded by *Auld,* since *Jensen* has determined that children need not be dependent in order to be beneficiaries of the survival action and we are bound by that decision.

■■ Defendant urges another ground for the barring of the survival action in that it contends that the failure to substitute the special adminstrator and to file an appropriate amended complaint for more than three years after deceased's death constitutes an effective bar to the action. Decedent was injured on December 12, 1961, the action was initially brought on November 2, 1964, he died on May 6, 1965 and suggestion of that death was made of record on October 27, 1969 and on that same date leave was sought to substitute as plaintiff, Bernard Ferak, Special Administrator of the Estate of Michael Ferak. That request was immediately granted. It is unnecessary to determine whether this question is governed by Fed. R. Civ. P. 25 (a) (1), or par. 54(2) of the Illinois Civil Practice Act as both sections state that dismissal of the action would be appropriate only if the motion for substitution is made more than 90 days after the death is suggested of record. The motion for substitution of parties was made on the very day deceased's death was suggested of record. This amounted to diligent compliance with the rules and therefore afforded no opportunity for a dismissal of the lawsuit.

■■ Defendant urges further, however, that the limitations found within the F.E.L.A. itself (45 U.S.C. par. 56) prohibit plaintiff from prosecuting his case. He contends that plaintiff's failure to suggest the death of record for more than four years after its occurrence bars the action in light of the statutory language which reads:

"No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued."

Central to defendant's contention is its belief that the cause of action "accrued" to deceased's personal representative on the date of death. The language of par. 56, however, does not indicate the giving of a cause of action where none had existed. The action "accrued" when the injuries occurred. (*Rodzik v. New York Central R.R. Co.* (E.D. Mich. 1959), 169 F.Supp. 803, 805.) On decedent's death, the action which had accrued to him survived to his personal representative. This clearly is not the initiation of a new cause of action, rather, it is a continuation of an old one. Thus, this contention of defendant must also fall.

Defendant next contends that the medical evidence is insufficient to sustain the verdict. A hypothetical question asked of plaintiff's duly qualified medical witness, a neurosurgeon, created a situation which included the matters brought into evidence. The witness was then asked whether a fall in a railroad yard might or could have resulted in the brain pathology described. Over defendant's objection, the witness answered affirmatively to a reasonable degree of medical certainty. A discussion outside of the presence of the jury revealed that defendant's objection was based upon a report wherein the witness, a treating physician, made specific medical findings and these comments: "known hypertension"; "Subarachnoid hemorrhage probably on a hypertensive basis"; and "either hypertension or trauma. Cannot be differentiated by me." The court overruled the objection, but stated that those matters may be brought out on cross-examination. On cross-examination the doctor testified that after initially examining the decedent, he believed that the condition resulted from hypertension. Also on May 23, 1962 and June 2, 1962 the doctor was unable to determine whether hypertension or trauma caused the subarachnoid hemorrhage.

The defense attorney then propounded another hypothetical which added the doctor's diagnosis and comments and the testimony of Donich, a co-worker, who stated he had seen defendant walking in an unsteady manner prior to the first fall. It must be noted at this point that at the time this question was propounded Donich had not yet testified and when he did testify, his statements that he had seen decedent "sliding back and forth," "staggering" and "wobbling," was severely shaken on cross-examination. The doctor responded that these additional facts would change his opinion in that the unsteadiness prior to the first fall "might or could be due to a pathological process in the brain already under way such as a stroke or a cerebrovascular accident or subarachoid hemorrhage or whatever."

On re-direct examination the doctor testified that any abnormal walking done by defendant could have been caused by a prior unwitnessed fall and that fall could have aggravated a hypertensive condition. Further, the doctor stated that his notation that decedent's injuries could have been caused by hypertension or trauma was made before he knew all the facts and circumstances of the events of December 12, 1961.

■■ Defendant's first contention with respect to the medical evidence relates to the hypothetical questioning of plaintiff's expert witness. Specifically, defendant urges that plaintiff's hypothetical question was improper in that it omitted facts within the witness' knowledge and omitted his recorded opinion that he was unable to differentiate between hypertension and trauma as the cause of decedent's condition. Defendant cites many cases supportive of his theory that the omission of the facts of a previously existing hypertensive condition rendered plaintiff's hypothetical question improper. While we agree with the principles stated in those cases, the better rule to apply to the instant case is found at I.L.P. Evidence, par. 330, which states in pertinent part:

> "Where the facts are disputed, the party examining the witness may include in the hypothetical question only facts which his evidence tends to prove and ask the question based thereon, and he should not ask the question in the form of a recitation of actual facts; but it is sufficient if the hypothetical question fairly states such facts as the proof of the questioner tends to establish and fairly presents his claim or theory, since, if the question does not sufficiently cover all the points in issue, the opposing counsel has the right to change the question so as to cover facts which he contends were applicable.
>
> In other words, when the facts are disputed, either party may put the expert questions embodying the disputed facts as his construction of the evidence would show them to be and have the opinion of the expert on the facts to assumed, and if all the relevant and material facts are not included or if the question omits facts claimed by the opposing party to have been proved the other party should call the attention of the witness to them on cross-examination, since the facts relied on and assumed in a hypothetical question put to an expert may be brought out either on direct examination or on cross-examination."

While there is no dispute over the existence of hypertension, its existence in decedent prior to December 12, 1961, is dubious as it was brought into the trial only by way of a report of the physician who had treated decedent after the accident. This report was based upon hearsay from an unknown source. Moreover, we feel that the hypothetical questions

asked of the doctor by plaintiff and defendant fully and fairly presented each side's theory of the case and left the matter for the jury's determination. We find no error in this regard.

■■ The sufficiency of the evidence to support the verdict is also challenged, but it is axiomatic that a court of review should not substitute its opinion for the finding of the trier of fact unless the holding of the finder of fact is against the manifest weight of the evidence, *i.e.*, an opposite conclusion must be clearly evident. (See *Comm v. Goodman* (1972), 6 Ill.App.3d 847, 852-854, 286 N.E.2d 758, 762-763.) The instant case does not present an appropriate case for reversal. The nub of this facet of the case on appeal turns on whether the evidence of causation is sufficient to sustain the verdict. First, there is the medical evidence that to a reasonable degree of medical certainty the pathology might or could have been caused by a fall in an icy railroad yard. Carnegie's testimony that decedent walked normally prior to the first witnessed fall but then had much difficulty keeping upright supports this theory. The theory remains sound in the face of Donich's testimony that decedent walked with an unsteady gait when he was seen that evening as there is no time sequence established as to whether this observation took place before or after the first fall which was seen by Carnegie. Further, Donich's testimony concerning decedent's walk was considerably shaken on cross-examination. Although there was little evidence of trauma to the skull or dura, plaintiff did bring out the fact that one set of x-rays showed three "questionable" fractures. Also plaintiff's expert witness testified that a less forceful trauma than a slip or fall may bring about the same pathology found in decedent. Thus, we believe that the evidence was sufficient to support the verdict.

Defendant next contends that the lower court erred in allowing Count 1 of the amended complaint to be amended thereby submitting the following allegations to the jury:

"4. That defendant was then and there guilty of one or more of the following wrongful acts:

❋  ❋  ❋

(f) Carelessly and negligently failed to render assistance to the plaintiff's decedent or to remove him to a place of safety after defendant's employee had observed [decedent] fall on the ice and then be in an obviously incapacitated and unsteady condition, but rather the defendant allowed the plaintiff's decedent to continue walking alone, by himself in the defendant's yard at night time, when the yard was icy and slippery;

(g) Carelessly and negligently, after discovering the plaintiff's

decedent in an obviously incapacitated and unsteady condition walking in the defendant's freight yard at night time when the yard was icy and slippery, abandoned the plaintiff's decedent at a time when the defendant knew, or in the exercise of ordinary care ought to have known, that plaintiff's decedent would fall again."

It is fundamental that such an amendment would be appropriate if the evidence supported the allegations. We believe it does. Carnegie's testimony established that he saw decedent fall and went to his aid. Instead of taking decedent to a place of safety, Carnegie left him at trackside. Granted, decedent said he was "O.K."; the ultimate question of negligence was for the jury to determine. There is also evidence that Donich saw decedent walking in an unsteady manner but gave him no aid. Although this testimony's value was decreased by cross-examination, its probative worth was for the jury to determine.

Defendant urges that as a matter of law those facts do not constitute sufficient basis for recovery. In support of that position defendant cites *Anderson v. Atchison Topeka & Santa Fe Ry. Co.* (1948), 333 U.S. 821; *Mangrum v. Union Pacific R.R. Co.* (1964), 41 Cal.Rptr. 536; *Szabo v. Pennsylvania R.R. Co.* (1945), 132 N.J.L. 331, 40 A.2d 562 and *Rival v. Atchison Topeka and Santa Fe Ry. Co.* (1957), 62 N.M. 159, 306 P.2d 648. We do not find those cases supportive of defendant's theory. In *Anderson* there is no reference to whether or not the employees who could have aided decedent therein had any managerial duties. The court merely referred to them as "employees" and made no indication of their rank in defendant's managerial hierarchy. Instead, the court in remanding the cause for further proceedings stated at 333 U.S. 823:

> "We are unable to agree that had petitioner been permitted to introduce all evidence relevant under her allegations, the facts would have revealed a situation as to which a jury under appropriate instructions could not have found the decedent's exposure and consequent death were due 'in whole or in part' to failure of respondent's agents to do what 'a reasonable and prudent man would ordinarily have done under the circumstances of the situation.'"

*Mangrum* explains *Anderson* by saying at 41 Cal.Rptr. 543:

> "Anderson holds, in effect, that the agency question as well as the question of negligence if the employees are found to be agents in the circumstances is a matter for the jury, thereby supporting the trial court's action in our case in leaving these questions to the jury."

The court went on to state:

"Only in extreme instances would it be the fellow employee's duty to report the condition of a sick employee.

\* \* \*

Thus, the court was right in leaving to the jury the determination of whether decedent's condition as it appeared to his fellow waiters was of the type which placed a duty upon them to report it."

The *Szabo* case did not specifically decide this question but merely stated as dictum "Now this emergency must arise in the presence of the employer but a superior employee in charge of the particular work is sufficient to charge the master." This statement is a far cry from the theory advanced by defendant that in all cases a co-worker's knowledge of decedent's emergent necessities could not as a matter of law be chargeable to defendant. To the same effect is the opinion of the Supreme Court of New Mexico in *Rival*.

■■ Thus, we hold that the trial court did not err in allowing the amendment of the complaint.

■■ Defendant lastly contends that the court erred in refusing one of its instructions which states:

"The defendant was not required under the law to furnish for the plaintiff's decedent a place to work which was absolutely safe. Its duty in that respect was only to exercise reasonable and ordinary care to provide a reasonably safe place for the plaintiff's decedent to perform the work he was performing at the time of the occurrence in question \* \* \*."

Defendant contends this instruction was approved in *Anderson v. Elgin, Joliet and Eastern Ry. Co.* (7th Cir., 1955), 227 F.2d 91, 98, and the instruction given may well have left the jury with the impression that defendant was under a positive duty to furnish plaintiff with a reasonably safe place to work. This was not possible. The instruction actually given [*] was in all material respects the same as that tendered by defendant. The only difference being the use of the term "ordinary care" instead of "reasonable care"; hardly a difference requiring reversal. Thus, we find no error in this regard.

The judgment of the circuit court is affirmed.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.

---

[*] "It was the duty of the railroad to use ordinary care to provide Michael Ferek with a reasonably safe place in which to work."