510 So.2d 520 (1987)
Rita IVY, As Next Friend of Andrea Denise Allen, a Minor
v.
ILLINOIS CENTRAL GULF RAILROAD COMPANY, et al.
No. 56800.
Supreme Court of Mississippi.
July 22, 1987.
*521 Bobby D. Robinson, Vicksburg, for appellant.
Wren C. Way, Way & Field, Burkett H. Martin, Ward, Martin & Terry, Vicksburg, for appellee.
Before the court en banc.
HAWKINS, Presiding Justice, for the court:
Rita Ivy appeals from the decision of the circuit court of Warren County dismissing her claim on behalf of her child Andrea Denise Allen to establish Nathaniel Gibbs as Andrea's natural father so as to entitle Andrea to death benefits under 45 U.S.C. § 59, the Federal Employers Liability Act. Finding no paternity was proven, we affirm.

FACTS
Nathaniel Gibbs was born June 12, 1952, one of eight children of Albert and Willie Mae Gibbs. In July, 1974, Nathaniel began working for the Illinois Central Gulf Railroad Company (ICG) as a laborer. While *522 employed on his job he was killed July 18, 1979.
Nathaniel never married, and lived with his parents who were at least partially dependent upon him.
On June 15, 1981, Mrs. Gibbs, as administratrix of Nathaniel's estate, in cause number 12,575 of the circuit court of Warren County, filed a declaration under the Federal Employers Liability Act (FELA), 45 U.S.C. § 59, alleging that she and her husband were his dependents. ICG filed an answer August 14, 1981.
On January 14, 1982, Rita Allen Ivy, as the next friend and mother of Andrea Denise Allen, moved to intervene in the cause, alleging that Andrea, born January 20, 1971, was the natural daughter of Nathaniel.
Mrs. Gibbs objected to the intervention, and in January, 1982, filed two pleadings seeking the court to overrule the motion, alleging Andrea was barred because of Miss. Code Ann. §§ 91-1-19 and 93-9-29, that she was not Nathaniel's child, and further that Nathaniel had never acknowledged Andrea as his child.
In April, 1982, Mrs. Gibbs filed an answer and affirmative defense to the motion to intervene, denying Andrea was Nathaniel's child, and alleging affirmatively that Nathaniel never acknowledged her as his child, that her claim was barred under Miss. Code Ann. § 93-9-13, and that Andrea had no claim under this state's wrongful death statute.
On April 28, 1982, the circuit court following a hearing (which is not transcribed in this record), entered a final judgment finding as a fact that Andrea was not Nathaniel's child. The judgment recites that Rita testified she met Nathaniel on or about September 1, 1970, and Andrea was born five months later. The circuit judge, John W. Prewitt, Sr., dismissed the motion to intervene "with prejudice."
Nathaniel's father died March 27, 1983.
On January 18, 1985, Rita filed an original complaint in cause number 13,647 of the Warren County circuit court as mother and next friend of Andrea, seeking benefits under the FELA. ICG answered this complaint, admitting liability for Nathaniel's death, but raising the question: which claimant was entitled to the death benefits. On the same date ICG moved to consolidate this action with # 12,575, initially filed by Mrs. Gibbs. The circuit judge, this time John E. Ellis, sustained this motion, and also ordered that the court would hear evidence and determine which of the plaintiffs was entitled to recover for death benefits.
No doubt the reader  as this Court  is perplexed why any attorney would expect to proceed in the same court, after having his motion to intervene, which asserted the same claim, "dismissed with prejudice."
The answer to this question is not in this record. Rita's brief indicates, however, that after her motion to intervene was dismissed, she filed an action in the United States District Court, which the opposing parties agreed to dismiss, and re-litigate this same issue in the Warren County circuit court.
Rita was born January 3, 1955. At the hearing Rita offered proof that Nathaniel made her pregnant, and that following the birth of Andrea he visited her periodically, gave her cash money every two weeks, and had bought presents for Andrea. She said she was nervous and confused when she testified at the first hearing that her sexual relations with Nathaniel began in September, 1970. Rita married Charles Ivy January 21, 1974, and they separated in 1979.
In defense, Mrs. Gibbs testified Rita was not at Nathaniel's funeral, she never met her, and in fact had never heard of her until she appeared in this proceeding. Nathaniel's family corroborated this.
There was no documentation of any kind supporting Andrea's claim of being Nathaniel's daughter.
Following the hearing the circuit court ruled that Nathaniel never acknowledged that Andrea was his child as required by law, and further there was not sufficient proof that Nathaniel supported her.

LAW
On appeal Rita argues that the circuit judge erred in his ruling that Nathaniel *523 never "acknowledged" Andrea as being his child. She urges we follow Miss. Code Ann. § 71-3-3(l) of the Workers Compensation Act in determining whether Andrea was entitled to benefits under FELA.
There was a misapprehension of the law in the circuit court proceedings which continues unabated on this appeal.
45 U.S.C. § 59 states:
§ 59. Survival of right of action of person injured
Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury.
In interpreting the meaning of "children" under this and similar Federal statutes, the United States Courts have held resort must be had to applicable state law, not any federal statute. Bowen v. New York Cent. R.R. Co., 179 F. Supp. 225 (D.C.Mass. 1959); Murphy v. Houma Well Service, 409 F.2d 804 (C.A.La. 1969), rehearing denied 413 F.2d 509; Smith v. Clark Sherwood Oil Field Contractors, 457 F.2d 1339 (C.A.La. 1972).
We do not agree in interpreting the meaning of the word "children" that we should apply the provisions of Miss. Code Ann. § 71-3-3(l), even if we did, it would not help Andrea, because there was not one word of proof that she was dependent on Nathaniel at the time of his death, or that Rita ever made any claim on him for support. This section specifically states, "acknowledged illegitimate child dependent on the deceased."
In this state there was no statutory authorization for recovery of damages by an illegitimate child for the death of its father prior to 1981. Miss. Code Ann. § 11-7-13, our wrongful death statute, until its amendment by Section 6 of Chapter 529, Laws of 1981, made no provision for a claim by an illegitimate child. This statute over the years has consistently provided that if the deceased left no wife the damages would be equally distributed to his children. And in Illinois Central Railroad Co. v. Johnson, 77 Miss. 727, 28 So. 753 (1900), this Court, albeit most reluctantly, held that an illegitimate could not recover under the Act, that children meant legitimate children. The Court noted that under the common law illegitimates were the children of nobody. That Court also noted that except where the inheritance statute specifically and humanely provides, illegitimate children had no right of inheritance.
Prior to 1981 there were certain circumstances whereby an illegitimate could inherit from his natural father. Miss. Code Ann. § 91-1-15 provided that an illegitimate child could inherit from his natural father provided that the father thereafter married its mother and "acknowledged" it as his child. Nichols v. Saul's Estate, 250 Miss. 307, 165 So.2d 352 (1964); Hulitt v. Jones, 220 Miss. 827, 72 So.2d 204 (1954).
Then along came Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), which held an Illinois statute, similar to our Miss. Code Ann. § 91-1-15, unconstitutional because it violated the equal protection clause by discriminating against illegitimate children. Thereafter, in Knight v. Moore, 396 So.2d 31 (Miss. 1981), we were asked to hold Miss. Code Ann. § 91-1-15 unconstitutional under Trimble. We declined to do so, deciding the case on other grounds.
No doubt in anticipation of the inevitability of Miss. Code Ann. § 91-1-15 eventually being held unconstitutional, the Legislature in 1981 enacted Chapter 529, Laws 1981 amending Miss. Code Ann. § 91-1-15 in pertinent part to this case as follows:
SECTION 1. Section 91-1-15, Mississippi Code of 1972, is amended as follows:
* * * * * *
(2) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate *524 according to the statutes of descent and distribution if:
* * * * * *
(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child... .
In that same enactment, Section 6, Miss. Code Ann. § 11-7-13 was amended so as to authorize illegitimates to participate in a wrongful death claim. This amended statute carries forward the historical provision that "if the deceased has no husband or wife, the damages shall be equally distributed to the children." It also contains a specific authorization for illegitimates to recover as well as follows:
[T]he provisions of this section shall apply to illegitimate children on account of the death of the natural father and to the natural father on account of the death of the illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.
This same statutory authority to inherit was carried forward in a further amendment of Miss.Code ann. § 91-1-15 by Chapter 339, Laws 1983:
(3) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
* * * * * *
(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child... .
Since Trimble, this Court has had occasion to address the question of inheritance by illegitimates under Miss. Code Ann. § 91-1-15 in the following cases: Miller v. Watson, 467 So.2d 672 (Miss. 1985); Berry v. Berry, 463 So.2d 1031 (Miss. 1984); Jones by Jones v. Harris, 460 So.2d 120 (Miss. 1984); Stevenson v. Daniels, 446 So.2d 597 (Miss. 1984); Witt v. Mitchell, 437 So.2d 63 (1983); Knight v. Moore, 396 So.2d 31 (1981).
Our Mississippi Constitution, Article 7, Section 193, dealing with injury and death of a railroad employee, contains this sentence: "Where death ensues from an injury to employees, the legal or personal representatives of the person injured shall have the same right and remedies as are allowed by law to such representatives of other persons." In Yazoo & M. Valley R. Co. v. Washington, 92 Miss. 129, 45 So. 614, we held that this section of the constitution authorized suits not only by an executor or administrator, but also the heirs or next of kin, thus making the procedure for enforcing a railway wrongful death claim the same as a proceding under the wrongful death statute.
We therefore hold that "children" under 45 U.S.C. § 59 means illegitimate children as well as legitimate children, provided paternity is established as required by Miss. Code Ann. §§ 91-1-27 and 91-1-29.
When Rita moved to intervene in the case, Miss. Code Ann. § 91-1-15 had been amended by Ch. 529, Laws 1981. It was incumbent on her to file a petition in the chancery court under Miss. Code Ann. § 91-1-27 and proceed under Miss.Code *525 Ann. § 91-1-29. The circuit judge should have sustained Mrs. Gibbs's objection to the intervention on the ground these statutes had not been followed. Apparently, the circuit judge heard the motion on the merits and dismissed it "with prejudice," because Rita's testimony made it biologically impossible for Nathaniel to have been the father. Manifestly, looking solely on the merits he was correct in dismissing the proposed intervention because there was no "clear and convincing evidence" Nathaniel was the natural father as required by paragraph (2)(c) of the Act. Indeed, the "clear and convincing evidence" was that Andrea was not Nathaniel's child.
When Rita filed her complaint on January 18, 1985, Miss. Code Ann. § 91-1-15 had again been amended by Ch. 339, Laws 1983, but insofar as the procedure for establishing Andrea as Nathaniel's nature child, the proceedings were the same. Under the amended statute it is still a prerequisite to file a petition in the chancery court under Miss. Code Ann. § 91-1-27, and hold proceedings as required under Miss. Code Ann. § 91-1-29 before any claim can be asserted in circuit court. We note in this connection that Mrs. Gibbs filed suit as administratrix of Nathaniel's estate. The record does not reveal what claim, if any, Rita asserted on behalf of Andrea in the estate proceedings. In any event, the circuit judge in 1985 should not have heard this matter since Miss. Code Ann. §§ 91-1-27 and 91-1-29 had not been substantially followed. But, by agreement of the parties, the circuit judge heard the issue of paternity on the merits. We will not reverse this case because the wrong court decided the issue, Article 6, Section 147, Mississippi Constitution.
On the merits the circuit judge also erred by considering that an "acknowledgment" by Nathaniel that Andrea was his child was the statutory prerequisite to Andrea having a valid claim. Miss. Code Ann. § 91-1-15 as amended, removes any such requirement. No doubt an open acknowledgement by a putative father that a child is his natural child has great bearing in determining the factual issue, but there is now no statutory requirement that he do so in order for a child to establish its right to inherit.
Aside from this, however, the circuit judge was manifestly correct by ruling that Rita failed to meet the burden of proof to sustain Andrea's claim she was Nathaniel's natural daughter. Not only did she fail to present clear and convincing evidence of such paternity, the evidence and circumstances heavily preponderate to the contrary.
Although it is now well settled under the United States Constitution, statutory law and decisions of this Court that an illegitimate child has a right to inherit in her father's wrongful death claim under Miss. Code Ann. § 11-7-13 (Supp. 1985) and 45 U.S.C. § 59, such claim must be asserted and established by clear and convincing evidence under Miss. Code Ann. §§ 91-1-27 and 91-1-29.
Andrea has no lawful claim under 45 U.S.C. § 59, and the decision of the circuit court is affirmed.
AFFIRMED.
WALKER, C.J., and DAN M. LEE, ANDERSON and GRIFFIN, JJ., concur.
ROY NOBLE LEE, P.J., and DAN M. LEE and SULLIVAN, JJ., concur in part by separate written opinion.
ROBERTSON, PRATHER, SULLIVAN and ANDERSON, JJ., concur by separate written opinion, with DAN M. LEE, J., concurring in part III only.
ROY NOBLE LEE, Presiding Justice, concurring:
I concur with the majority opinion in affirming the judgment of the lower court, except I disagree that the circuit judge should not have heard the matter because Mississippi Code Annotated §§ 91-1-27 and 91-1-29 had not been substantially followed.
In this action, arising under the Federal Employers' Liability Act (FELA), 45 U.S.C. *526 § 59, an important issue in the trial of the case was the lawful survivors of the deceased, whether widow, children or parents. That issue, of necessity would have to be determined by the court having jurisdiction of the action, i.e., Circuit Court of Warren County, Mississippi, and that court was not required to transfer the cause to another court to determine such issue. In my opinion, the Circuit Court of Warren County properly and correctly proceeded to hear and determine the issue and did not commit error in so doing.
DAN M. LEE, and SULLIVAN, JJ., join this opinion.
ROBERTSON, Justice, concurring:

I.
I agree that the judgment of the Circuit Court should be affirmed, although, in my view, both the Circuit Court and today's majority reach the right result for the wrong reasons. See Hickox By and Through Hickox v. Holleman, 502 So.2d 626, 635 (Miss. 1987). I write separately, however, because I perceive the majority opinion to send out three rather seriously misleading signals on points of law of concern beyond this case.

II.
Both the Circuit Court and today's majority misconceive the procedural sequencing of the handling of a third party's motion for leave to intervene. The error lies in the fact that the Circuit Court reached the merits before deciding whether intervention should be allowed. The Circuit Court adjudged  and denied  the merits of the claim asserted in the complaint in intervention and only then considered and denied intervention. The majority seems to affirm that view.[1]
Whether the motion to intervene should have been allowed is a function of rules of procedure. When such a motion is filed by one seeking to intervene in a pending action, the grant or denial of that motion does not turn on any view of the merits of the intervenor's claim, with one limited exception: the proposed complaint in intervention must state a claim adequate to survive a motion to dismiss under Rule 12(b)(6). You don't decide the merits of a claim in intervention prior to acting upon the motion to intervene, yet that is exactly what the Circuit Court did and what the majority inexplicably affirms.
Today, when a motion is filed seeking leave to intervene, that motion should be tested in accordance with the provisions of Rule 24, Miss.R.Civ.P. Guaranty National Insurance Co. v. Pittman, 501 So.2d 377, 382 (Miss. 1987). The allegations of the complaint in intervention must be taken as true. Only if it may be said with confidence that the intervenor can prove no set of facts that would entitle her to relief may the motion for leave to intervene be denied on the merits. See Bias v. Bias, 493 So.2d 342, 343-44 (Miss. 1986); Luckett v. Mississippi Wood, Inc., 481 So.2d 288, 290 (Miss. 1985); Busching v. Griffin, 465 So.2d 1037, 1042 (Miss. 1985); Stanton & Associates, Inc. v. Bryant Construction Co., 464 So.2d 499, 505-06 (Miss. 1985).
In the case at bar, the motion for leave to intervene, as filed by Rita Ivy as next friend of Andrea Denise Allen, a minor, passes this threshold test. There is no doubt of the timeliness of the application for intervention. The minor child certainly claims an interest in the transaction which is the subject matter of the action and is so situated that disposition of the action may as a practical matter impede her ability to protect that interest. The fact that Plaintiff Gibbs denies that the minor child has any right makes clear that the child's interests are not adequately represented by existing parties. Rita Ivy has satisfied the requirements of Rule 24(a)(2), Miss.R. Civ.P.
*527 Beyond that, the proposed complaint in intervention alleges that Andrea Denise Allen is the child of Nathaniel Gibbs, deceased. Before she may prevail on her claim, she must establish that fact, but nothing in our procedure authorizes the Court to require this as a prerequisite to granting the motion to intervene. Rather, at least as I view the matter, the motion to intervene should be allowed and then, before any recovery could be had, the child would be required to prove this essential fact. The paternity adjudication is a ticket Rita is free to purchase on Andrea's behalf as she will at any time prior to  or even as a part of  final judgment on the merits of her FELA complaint.
Allowing intervention would in no way enlarge the jurisdiction of the Circuit Court. See Hall v. Corbin, 478 So.2d 253, 256-57 (Miss. 1985). That jurisidiction, subject matter variety, vested by virtue of the filing of a properly pleaded FELA complaint by Willie Mae Gibbs. See Illinois Central Railroad Company v. Coussens, 223 Miss. 103, 110-18, 77 So.2d 818, 819-23 (1955); see also Lee v. Coahoma Opportunities, Inc., 485 So.2d 293, 294 (Miss. 1986). The complaint in intervention arises out of the same occurrence as the original FELA complaint  the death of Nathaniel Gibbs, "and thus lies within the adjudicating power of the Circuit Court because it is a part of the same case over which that court has already acquired jurisdiction," Hall v. Corbin, 478 So.2d 253, 257 (Miss. 1985), all of which leads to my next point. For the moment, I suggest merely that motion for leave to intervene was erroneously denied.

III.
My second quarrel with the majority regards its grudging  and, as I see it, erroneous  view of the Circuit Court's authority to hear and adjudicate the paternity issue. As the record reflects, the Circuit Court did in fact hear and decide the merits of the question of whether Andrea was the natural daughter of Nathaniel Gibbs, albeit that issue was erroneously heard before the Court acted on the motion to intervene. In any event, the majority suggests that we should not disturb the Circuit Court's decision that Andrea was not the daughter of Nathaniel because the issue was litigated in the Circuit Court "by agreement of the parties." Curiously changing horses, the majority then says that this is a ruling which should not be reversed because decided by the wrong court, see Miss. Const. Art. 6, § 147 (1890), the majority being of the view that this issue may be heard only in chancery court.
Although the sequencing of the hearing of the paternity issue in the Circuit Court was incorrect, I strongly take issue with the inference that, absent agreement of the parties, the Circuit Court could not hear that question or, in the alternative, that the only way to save (non)paternity adjudication was to invoke Section 147 of the Constitution. Under principles well accepted in this and every other jurisdiction I know anything about, once the Circuit Court acquired subject matter jurisdiction of the wrongful death/FELA claim on behalf of the heirs of Nathaniel Gibbs, it became empowered to hear and decide all issues incident to that claim. See Hall v. Corbin, 478 So.2d 253, 255 (Miss. 1985); Penrod Drilling Co. v. Bounds, 433 So.2d 916, 927 (Miss. 1983) (concurring opinion).
Without doubt litigation of the paternity issue is a matter within the competence of a chancery court of appropriate venue and in personam jurisdiction. Miss. Code Ann. §§ 91-1-15, 27 et seq. (Supp. 1986). But nothing in that statute precludes circuit court adjudication of the paternity issue where it is present in an action otherwise within the competence of the circuit court. The question turns on whether the pendent issue, the paternity issue, derives from a common nucleus of operative fact with the principal claim; that is, whether the pendent issue is a part of the same case.
Put otherwise, the FELA/wrongful death claim is one clearly within the competence of the Circuit Court. An element of that claim is proof of kinship to Nathaniel Gibbs, 45 U.S.C. §§ 51, 59. In order to obtain a share of the recovery, the child, Andrea Denise Allen, must prove that she is indeed the child of Nathaniel Gibbs in the *528 very same legal sense that Willie Mae Gibbs, the original plaintiff, must prove that she is the mother of Nathaniel Gibbs. The Circuit Court is as competent to make one determination as the other.
There is nothing novel in this view. One of the inevitable by-products of our divided trial court system  circuit and chancery  is that there will be cases that present multiple issues, some legal and some equitable. While in certain instances there is the power of the one court to transfer a portion of the matter to the other for hearing, see Thompson v. First Mississippi National Bank, 427 So.2d 973, 975-76 (Miss. 1983); M.T. Reed Construction Co. v. Nicholas Acoustics and Specialty Co., 379 So.2d 308 (Miss. 1980) and 387 So.2d 98 (Miss. 1980); Clark v. Whiten, 508 So.2d 1105 (Miss. 1987) (not yet reported), that power is exercised as a matter of convenience and not necessity.
Our chancery courts have long been vested with a pendent jurisdiction to hear and adjudicate claims at law. Once chancery court subject matter jurisdiction otherwise attaches, a chancery court is empowered to grant wholly legal relief. See, e.g., Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 464 (Miss. 1983); Shaw v. Owen Gin Co., 229 Miss. 126, 133, 90 So.2d 179, 181 (Miss. 1956). And, this notwithstanding the deprivation of the constitutional right to trial by jury otherwise available regarding the legal claim had it been heard in the law court  the circuit court. Talbot and Higgins Lumber Co. v. McLeod Lumber Co., 147 Miss. 186, 113 So. 433 (1927).
The converse principle obtains in the circuit court. Once a circuit court acquires jurisdiction over a case within its subject matter jurisdiction, it may hear and adjudicate in that action all claims, including those otherwise of chancery competence, so long as those claims arise out of the same transaction and occurrence as the principal claim. Dye v. State Ex Rel. Hale, 507 So.2d 332, 337-38 (Miss. 1987); Hall v. Corbin, 478 So.2d 253, 255-57 (Miss. 1985); see also Canton Farm Equipment, Inc. v. Richardson, 501 So.2d 1098, 1102-03 (Miss. 1987). This view of the circuit court's pendent jurisdiction is particularly appropriate  more so than in the converse case of chancery pendent jurisdiction  because circuit courts are courts of general jurisdiction. Miss. Const. Art. 6, § 156 (1890); Hall v. Corbin, 478 So.2d at 255.
Anomaly attends the suggestion that the Circuit Court of Warren County is without competence to decide the question whether Nathaniel Gibbs was the father of Andrea Denise Allen. In the context of paternity actions, as distinguished from heirship actions, our chancery courts commonly refer that determination to the circuit court for the reason that the putative father in a paternity action has a right of trial by jury. See Clark v. Whiten, 508 So.2d 1105 (Miss. 1987). Again, such transfer occurs as a matter of convenience and not necessity. But whether the matter is heard by a jury or not does not control subject matter jurisdiction, a matter necessarily to be resolved prior to considering whether a party is entitled to trial by jury. We do not see how it might rationally be said, on the one hand, that adjudication of the question whether Andrea Denise Allen is the child of Nathaniel Gibbs is within the subject matter jurisdiction of the Circuit Court were Gibbs alive and were the suit a paternity suit, see Miss. Code Ann. § 93-9-15 (1972), while, on the other hand, that the precise same factual question is without circuit court jurisdiction where the proceeding is labeled one to establish heirship, see Miss. Code Ann. § 91-1-15(3)(c) (Supp. 1986). Subject matter jurisdiction should not and does not turn on whether Nathaniel Gibbs be dead or alive.
Close scrutiny of the heirship statute, Section 91-1-15, precludes our determining that litigation of the heirship question is within the exclusive competence of the Chancery Court. That statute provides that the action may be brought under Section 91-1-27 which simply provides that a person seeking to establish his status as heir at law of one who died intestate "may petition the chancery court" of the county in which the deceased resided at his death, etc. There is nothing in the statute suggesting that he may not petition the circuit court, particularly in cases where the principal *529 claim is already being heard in the Circuit Court.
There is yet another error in the majority's view. If we understand what the opinion is saying, the majority would hold that the heirship matter may be considered and decided only by a chancery court of otherwise competent jurisdiction. If that be the majority's position, it is difficult to understand the import of the statement on page 8 that the issue of paternity was decided on its merits in the Circuit Court "by agreement of the parties." If we are considering here a matter of subject matter jurisdiction, the agreement of the parties is wholly irrelevant for one cannot confess subject matter jurisdiction. See, e.g., In re City of Ridgeland, 494 So.2d 348, 350 (Miss. 1986); McMillan v. Tate, 260 So.2d 832, 833 (Miss. 1972); Myrick v. Mansell, 184 Miss. 701, 705, 185 So. 581, 582 (1939).
On the view I take, I recognize that the issue of paternity may more conveniently be decided in a separate hearing, perhaps even a non-jury hearing. If such appears the case, the circuit court has the discretionary authority to sever the issue and hold such a hearing. Rule 42(b), Miss.R. Civ.P.; Reikes v. Martin, 471 So.2d 385, 395 (Miss. 1985) (concurring opinion). The rules thus contemplate the convenience incident to bifurcated hearings without the inconvenience of separate civil actions in separate courts before separate judges.

IV.
I have a third complaint. On page 4, the majority implies that, even though Andrea had proved that Nathaniel Gibbs were her father, her claim still would fail "because there was not one word of proof that she was dependent on Nathaniel at the time of his death." In my view, a child of a railroad worker is not required to prove before-the-fact dependency to become an FELA wrongful death beneficiary. Dependency, if relevant at all, affects the amount of recovery, not entitlement.
The scheme of the act recognizes several classes of beneficiaries and accords preferences. The first class includes "the surviving widow or husband and children of such employee." 45 U.S.C. § 59. Second are the parents of the employee. Third are the employee's dependent next of kin. The act does not require proof of before-the-fact dependency unless recovery is sought by class three beneficiaries, dependent next of kin other than spouse, children or parents. A child of the deceased railroad worker is not required to prove dependency. Ferak v. Elgin Joliet; & Eastern Railway Co., 9 Ill. App.3d 199, 202-03, 292 N.E.2d 131, 133-34 (1972); Hopps' Estate v. Chestnut, 324 Mich. 256, 261-63, 36 N.W.2d 908, 911 (1949).
Once beneficiary status is shown, FELA damages are measured by pecuniary loss. A child's measure of recovery is his reasonable expectation of pecuniary benefit from the continued life of the deceased had he lived. See, e.g., Teeters v. Pennsylvania Railroad Co., 118 F. Supp. 385, 386 (W.D. Pa. 1954); Kansas City, Mexico & Orient Railway Co. v. Roe, 50 Okla. 105, 106-07, 150 P. 1035, 1036 (1915). This right is available to illegitimate children as well as legitimates. In re Industrial Transportation Corp., 344 F. Supp. 1311, 1313-14 n. 3 (E.D.N.Y. 1972); Huber v. Baltimore & Ohio Railroad Co., 241 F. Supp. 646, 652 (D.Md. 1965); Tune v. Louisville & Nashville Railroad Company, 223 F. Supp. 928, 930 (M.D.Tenn. 1963).
No doubt there is much case law to the effect that the definition of "children" within the FELA is informed by state law. Today, as a matter of both state law and federal constitutional imperative, the definition includes illegitimate children. Miss. Code Ann. §§ 11-7-13 and 91-1-15 (Supp. 1986). See Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) and progeny. The point for the moment is that state law affords an illegitimate child a reasonable expectation of pecuniary benefit from the continued life of his or her father. Miss. Code Ann. § 93-9-9 (Supp. 1986) imposes upon him a judicially enforceable duty to "furnish the reasonable expenses of ... education, necessary support and maintenance, and medical ... expenses for ... the child." The sums that the father could have been required to provide for his *530 illegitimate child as a matter of common sense represents the child's minimum reasonable expectation of pecuniary benefit for FELA purposes. This is so without regard to whether evidence establishes that prior to that time the child has in fact been dependent upon his or her father. Put otherwise, our law presumes that a minor child depends financially upon his or her father, and this is as true in the case of illegitimates as of legitimates.
In the case at bar, the point is academic. Rita failed to prove that Nathaniel Gibbs was the father of Andrea. I trust no one will read anything said today to suggest for future cases that an illegitimate child must prove a past state of dependency before he or she may recovery in an FELA wrongful death action.
PRATHER, SULLIVAN and ANDERSON, JJ., join in this opinion.
DAN M. LEE, J., concurs in part III only.
NOTES
[1] Although the present case was filed on June 15, 1981  and thus is not governed by the Mississippi Rules of Civil Procedure  I think it sends out extremely misleading and unfortunate signals regarding the handling of these motions for the future. Because pre-January 1, 1982, intervention law is now of little more than historical interest, I will discuss the case as it should have been handled under Rule 24, Miss. R.Civ.P.