# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CA-00892-SCT

*COLUMBUS PAPER & CHEMICAL, INC.*

*v.*

*JOHN A. CHAMBERLIN, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/14/92 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOSEPH N. STUDDARD |
| | FRANK B. WEBB |
| ATTORNEYS FOR APPELLEE: | DEWITT T. HICKS |
| | CYNTHIA E. DANIELS |
| | JIM WAIDE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 5/30/96 |
| MOTION FOR REHEARING FILED: | 6/21/96 |
| MANDATE ISSUED: | 1/8/97 |

**EN BANC.**

**LEE, CHIEF JUSTICE, FOR THE COURT:**

¶**1.** The Appellee ("Chamberlin") filed suit against the Appellant ("Columbus Paper") under the Age Discrimination in Employment Act (ADEA) in the Lowndes County Circuit Court alleging that Columbus Paper had impermissibly discharged him from employment because of his age. After all pre-trial matters were resolved, the case was tried and the jury, after receiving instructions from the trial court, found for Chamberlin and awarded damages in the amount of $85,500. The jury also determined that Columbus Paper's violation of the ADEA was "willful" and, thus, awarded Chamberlin an additional $85,500 as permitted by the act. Columbus Paper, aggrieved by the jury's verdict and award, appeals and assigns the following as error:

> **I. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT N.O.V. OR ALTERNATIVELY, MOTION FOR NEW TRIAL AS A RESULT OF PLAINTIFF'S FAILURE TO PROVE THAT AGE WAS A DETERMINATIVE FACTOR RELATING TO HIS TERMINATION FROM DEFENDANT'S EMPLOYMENT?**

**II. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT N.O.V. OR ALTERNATIVELY, MOTION FOR NEW TRIAL AS A RESULT OF PLAINTIFF'S ADMITTED FAILURE TO MITIGATE DAMAGES?**

**III. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT N.O.V. OR ALTERNATIVELY, MOTION FOR NEW TRIAL RELATING TO DAMAGES AWARDED FOR A WILLFUL VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT?**

**IV. THE TRIAL COURT ERRED IN REFUSING TO GRANT DEFENDANT'S MOTION FOR NEW TRIAL BASED UPON THE FOLLOWING ERRORS, ALL OF WHICH TAKEN TOGETHER DENIED DEFENDANT ITS CONSTITUTIONAL RIGHT TO TRIAL BY AN IMPARTIAL JURY PROPERLY INSTRUCTED AS TO THE LAW**

**A. THE TRIAL COURT FAILED TO CLARIFY CONFUSION AMONG THE JURY, WHEN PRESENTED A WRITTEN QUESTION FROM THE JURY AFTER THEIR DELIBERATIONS HAD BEGUN.**

**B. THE RECEIPT AND EXTENDED USE DURING JURY DELIBERATIONS OF PLAINTIFF'S UNAUTHORIZED DRAFT JURY INSTRUCTIONS MISTAKENLY HANDED TO THE JURY, MANY OF WHICH CONTAINED ERRONEOUS LAW REFUSED BY THE COURT AND ONE OF WHICH BEING A PEREMPTORY INSTRUCTION FOR PLAINTIFF.**

**C. THE HIGHLY PREJUDICIAL, RACIALLY PROVOCATIVE AND EMOTIONALLY INFLAMMATORY APPEAL TO THE PASSIONS OF THE JURY ELICITED BY REFERENCE TO THE RODNEY KING VERDICT (RENDERED 14 DAYS EARLIER) MADE IN CLOSING ARGUMENT BY PLAINTIFF'S COUNSEL TO A RACIALLY MIXED JURY.**

## STATEMENT OF THE CASE

¶2. Chamberlin filed suit on August 24, 1990, in the Lowndes County Circuit Court against Columbus Paper, Jimmie E. Nolen ("Nolen") and Clanton Johnson ("Johnson") alleging that he had been willfully terminated from his job because of his age. In addition to the allegation that he was terminated because of his age, Chamberlin claimed that Nolen and Johnson interfered with his employment relationship and that the non-compete covenant contained in the Agreement Of Purchase And Sale was void and unenforceable. Finally, Chamberlin's complaint sought a reformation of a lease between Columbus Paper and Chamberlin.

¶3. On May 11, 1992, the trial court granted summary judgment in favor of Nolen and Johnson individually and also granted summary judgment in Columbus Paper's favor as to Chamberlin's claim that his lease with Columbus Paper was invalid. On May 13, 1992, before the start of trial, Chamberlin dropped his claim that the non-compete covenant was void.

¶4. Thereafter, the case proceeded to trial on the sole issue of whether Columbus Paper had unlawfully fired Chamberlin because of his age. After a two-day trial, the jury returned a verdict for Chamberlin against Columbus Paper in the amount of $171,000. Columbus Paper timely filed its post-trial motions and

these motions were denied on August 19, 1992. Columbus Paper timely filed its notice of appeal on August 31, 1992.

## STATEMENT OF THE FACTS

¶5. John Chamberlin started the forerunner to Columbus Paper in 1967 when, as a part-time job, he sold cleaning supplies from his home and from the back of his station wagon. Chamberlin eventually incorporated his cleaning supply business and took on two partners, Burlon Laird and Bob Ward. Initially, Chamberlin, Laird and Ward each owned one-third of Columbus Paper's stock. Later, Ward sold his one-third share of Columbus Paper to Nolen, and later Burlon Laird sold his one-third share of the company to Johnson. This left Chamberlin, Nolen and Johnson as the sole shareholders in Columbus Paper.

¶6. After Johnson bought into the company, the atmosphere between the three owners became strained and on several occasions Nolen and Johnson outvoted Chamberlin on issues concerning Columbus Paper. This led Chamberlin to feel as if he was being left out of the decision-making process.

¶7. In 1986 Chamberlin and Nolen decided that either Chamberlin would buy Nolen's share of the company or Nolen would buy Chamberlin's share of the company. Chamberlin testified that, in light of the fact that he was consistently outvoted on company matters, he decided to sell his share of the company and get his "money out of it."

¶8. Nolen presented Chamberlin with a proposed agreement covering the sale of Chamberlin's share of the company. This agreement contained a non-compete provision and a provision that provided that Chamberlin could continue with the company as a "terminable at will" employee. Chamberlin took this proposed agreement to his son-in-law (John Banahan), a lawyer in Pascagoula, and sought his advice. Chamberlin's son-in-law suggested a few changes to the agreement which included changing the terms of employment to the following: "**Corporation and Seller hereby agree that Seller will continue in the employment of Corporation, and that the Corporation may terminate the employment relationship for cause at any time prior to January 27, 1990, and at will thereafter.**" Chamberlin presented the proposed changes to Nolen and subsequently, the parties agreed to incorporate them into the May 27, 1987, Agreement Of Purchase And Sale.

¶9. Both parties agreed to the terms of the contract and the sale of Chamberlin's share of Columbus Paper was consummated. As consideration for the purchase of Chamberlin's share of Columbus Paper, Nolen paid Chamberlin $140,000 and relieved Chamberlin of an outstanding $60,000 obligation Chamberlin had with a local bank.

¶10. Thereafter, Chamberlin worked for the company as a salesman until approximately January 22, 1990, when Nolen notified Chamberlin as follows: "After carefully considering about [sic] your employment with us. I have decided it would be best for you to finish up at the end of January according to our agreement." At first, Chamberlin asked if he could stay on a couple of months to take someone around to show them his routes. Nolen agreed to this arrangement, and then Chamberlin changed his mind, turned in his keys and delivered a letter to the staff telling them where to forward his mail. From this point on the litigants' stories differ.

¶11. At trial Nolen adamantly denied that Chamberlin was fired because of his age and testified that he thought under the contract he did not have to have a reason to fire Chamberlin. Chamberlin, on the other

hand, testified that he must have been terminated because of his age since he was terminated on his sixty-fifth birthday (January 27, 1990, was Chamberlin's birthday).

¶12. After he was terminated, Chamberlin talked to other competing paper and chemical businesses about working for them. However, as Chamberlin had signed a non-competition agreement when he sold his share of Columbus Paper, the companies interested in hiring Chamberlin felt that he was not employable in that field in the Columbus area for at least three years after his January 1990 termination date. After learning that he could not work in Columbus in the cleaning supply business, Chamberlin testified that he did not feel that he could work any other type of job because of his age and lack of experience in other areas.

¶13. At trial Nolen and Johnson testified that, pursuant to the May 27, 1987, contract, it was their understanding that Chamberlin would leave the company after January 27, 1990. Chamberlin testified that it was his understanding that he could stay with the company indefinitely.

¶14. Columbus Paper representatives testified as to various "problems" they had with Chamberlin during the approximately three years he worked for Columbus Paper after selling his ownership interest, *i.e.*, Chamberlin monopolized the front desk area, he "snooped" in the files, he was opposed to upgrading equipment, and he would not use the order forms provided by the company. In turn, Chamberlin testified to certain problems he had with Nolen and Johnson, *i.e.*, they outvoted him on moving into the Tupelo market, they outvoted him on his insurance policy, they went to look at a paper mill without telling him, they outvoted him on serving as president of Columbus Paper, etc. Columbus Paper admitted that the reasons stated above were not the reasons they fired Chamberlin and Chamberlin admitted that none of his problems with Columbus Paper or with Nolen and Johnson were a result of his age.

¶15. At trial Chamberlin testified that he was entitled to $85,500 in compensatory damages and an additional $85,500 because Columbus Paper had wilfully violated the ADEA when it terminated Chamberlin because of his age. After the close of all the testimony, the jury returned a verdict for Chamberlin in the amount of $171,000.

## DISCUSSION

¶16. The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.,* was enacted by congress in 1967 in an attempt to eradicate age discrimination in the workplace. *McKennon v. Nashville Banner Pub. Co.*, 115 S. Ct. 879, 884 (1995). The ADEA generally protects employees between the ages 40 and 70, 29 U.S.C. § 631(a), and makes it unlawful for any employer:

> to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1). ADEA suits may be brought in either state court or federal court. 29 U.S.C. § 626(c)(1). *See, e.g., Gilder v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 21 (1991). This Court, when enforcing rights created under federal law, must follow the interpretations of those rights provided by federal courts. *Saunders v. Mullins*, 412 So. 2d 245 (Miss. 1985); *Illinois Central Railroad Co. v. Coussens*, 223 Miss. 103, 113, 77 So. 2d 818, 821 (1955).

¶17. When evaluating an ADEA claim, the Supreme Court frequently looks to the substantive law of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).[1] In fact, the United States Supreme Court recently stated:

> The ADEA is but part of a wider statutory scheme to protect employees in the workplace nationwide. The ADEA incorporates some features of both Title VII and the Fair Labor Standards Act, which has led us to describe it as "something of a hybrid." The substantive, antidiscrimination provisions of the ADEA are modeled upon the prohibitions of Title VII.

*McKennon*, 115 S. Ct. at 884 (citations omitted). "The ADEA and Title VII share common substantive features and also a common purpose: 'the elimination of discrimination in the workplace.'" *Id.* at 884 (quoting *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979)).

¶18. If found guilty of violating the ADEA, the defendant can be ordered to reinstate the plaintiff or provide back pay. *Lorilland v. Pons*, 434 U.S. 575, 584 (1978). In the case of a willful violation of the Act, the ADEA authorizes an award of liquidated damages equal to the back pay award. *McKennon*, 115 S. Ct. at 882.

¶19. On appeal, we find that Columbus Paper's first assignment of error is dispositive and warrants reversal of the jury's verdict. Accordingly, this opinion will not address assignments of error II through IV.

### I. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT N.O.V. OR ALTERNATIVELY, MOTION FOR NEW TRIAL AS A RESULT OF PLAINTIFF'S FAILURE TO PROVE THAT AGE WAS A DETERMINATIVE FACTOR RELATING TO HIS TERMINATION FROM DEFENDANT'S EMPLOYMENT?

¶20. On appeal, Columbus Paper concedes that Chamberlin met his burden of establishing a *prima facie* case of age discrimination, but contends that the trial judge should have granted its request for a judgment notwithstanding the verdict or, in the alternative, motion for a new trial because Columbus Paper rebutted Chamberlin's *prima facie* case with "age neutral" reasons for terminating Chamberlin. Having rebutted Chamberlin's *prima facie* case, Columbus Paper argues that it was then Chamberlin's burden to establish that age was a "determinative factor" in his discharge. *See Hazen Paper Co. v. Biggins*, 113 S. Ct. 1701, 1706 (1993); *Normand v. Research Institute of America, Inc.*, 927 F.2d 857, 864 (5th Cir. 1991).

¶21. Chamberlin argues that Columbus Paper's age-neutral reasons for terminating him were not credible and were "pretextual." Because Columbus Paper gave pretextual reasons for his termination, Chamberlin contends, the jury could infer that these pretextual reasons constituted evidence of an improper age-based animus. *Burns v. Texas City Refining, Inc.*, 890 F.2d 747 (5th Cir. 1989), *reh'g denied*, 896 F.2d 549 (1990).

### STANDARD OF REVIEW

¶22. Columbus Paper moved for a judgment as a matter of law both before and after the verdict. Accordingly, this Court will review the trial court's denial of Columbus Paper's motion for judgment as a matter of law using the following standard:

> Under *Boeing*, judgment as a matter of law is appropriate if the facts and inferences point so strongly and overwhelmingly in favor of one party that a reasonable jury could not have concluded that the ADEA was violated. A mere scintilla of evidence is insufficient to present a question for the jury. There must be a conflict in substantial evidence to create a jury question. Applying *Boeing* to this

case, the district court's judgment should be reversed only if the facts and accompanying inferences would not permit reasonable people to conclude that Pinkerton discharged Armendariz because of his age.

*Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 148 (5th Cir. 1995) (citations omitted) (citing *Boeing Company v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969)). *See also Binder v. Long Island Lighting Co.*, 57 F.3d 193, 199 (2nd Cir. 1995); *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033 1038-39 (2d Cir. 1992) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970)).

## ELEMENTS OF PROOF UNDER ADEA

¶23. The ADEA makes it illegal for an employer to terminate any employee because of the employee's age. 29 U.S.C. § 623(a)(1). To prove a violation of the ADEA, the plaintiff must prove intentional discrimination. *Armendariz*, 58 F.3d at 149. If the plaintiff does not have direct proof of age-based animus, as in the case *sub judice,* the plaintiff can create a rebuttable presumption of discrimination by establishing a *prima facie* case. *Armendariz*, 58 F.3d at 149; *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 117-18 (5th Cir. 1993). A plaintiff demonstrates a *prima facie* case by showing that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. *Bodenheimer v. PPG Indus, Inc.*, 5 F.3d 955, 957 (5th Cir. 1993); *Bohrer v. Hanes Corp.*, 715 F.2d 213, 218 (5th Cir. 1983), *cert. denied*, 465 U.S. 1026 (1984).

¶24. Once the plaintiff presents a *prima facie* case of age discrimination, the burden of production shifts to the defendant to establish a nondiscriminatory reason for its decision. *Bodenheimer*, 5 F.3d at 957. In *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2748-49 (1993), the United States Supreme Court explained the application of burden shifting in cases such as this one at bar. The Court held:

In the nature of things, the determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment. For the burden-of-production determination necessarily *precedes* the credibility-assessment stage. At the close of the defendant's case, the court is asked to decide whether an issue of fact remains for the trier of fact to determine. None does if, on the evidence presented, (1) any rational person would have to find the existence of facts constituting a prima facie case, and (2) the defendant has failed to meet its burden of production-*i.e.*, has failed to introduce evidence, which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action. In that event, the court must award judgment to the plaintiff as a matter of law under Federal Rule of Civil Procedure 50(a)(1) (in the case of jury trial) or Federal Rule of Civil Procedure 52(c) (in the case of bench trials). If the defendant has failed to sustain its burden but reasonable minds could differ as to whether a preponderance of the evidence establishes the facts of a prima facie case, then a question of fact does remain, which the trier of fact will be called upon to answer.

If, on the other hand, the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework-with its presumptions and burdens-is no longer relevant. To resurrect it later, after the trier of fact has determined that what was "produced" to meet the burden of production is not credible, flies in the face of our holding in *Burdine* that to rebut the presumption "[t] he defendant need not persuade the court that it was actually motivated by the proffered reasons." 450 U.S. at 254, 101 S. Ct. 1094. The presumption, having fulfilled its role of forcing the defendant

to come forward with some response, simply drops out of the picture.

(citations omitted).

¶25. The *St. Mary's* Court held that once the defendant gives non-discriminatory reasons to rebut the employee's *prima facie* case, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason was false <u>and</u> that discrimination was the real reason for the termination. *St. Mary's* at 2752. *See also Marcantel v. Dep't of Transp. and Dev.*, 37 F.3d 197, 200 (5th Cir. 1994) (*St. Mary's* settled the issue that "the 'pretext-only' doctrine is not enough; even if the employee proves that the employer's nondiscriminatory reason is pretextual, the plaintiff must prove that an unlawful discriminatory intent motivated the employer's action"); *Anderson v. Baxter Health Care Corporation*, 13 F.3d 1120, 1125-26 (7th Cir. 1994) (ADEA plaintiff is not entitled to judgment as a matter of law simply because she proves her *prima facie* case and then shows that the employers proffered reasons for her discharge are false); Tim D. Gray, *Employment Discrimination: Summary Judgment And Rule 301 After St. Mary's Honor Center v. Hicks*, 15 Miss. C. L. Rev. 217, 222 (1994) (discussing plaintiff's burden after defendant offers non-discriminatory reason for termination). "In an ADEA case, the critical test is that the plaintiff must prove that age 'actually played a role in' and 'had a determinative influence on' the employer's decision-making process." *Armendariz*, 58 F.3d at 149 (quoting *Hazen Paper Co. v. Biggins*, 113 S. Ct. 1701, 1706 (1993)).

## THE EVIDENCE

¶26. In the case *sub judice*, Columbus Paper concedes that Chamberlin established a *prima facie* case of age discrimination. Chamberlin established that he was sixty-five years old at the time he was terminated from his job. Also, the evidence adduced at trial indicated that Chamberlin was qualified to do the job for which he was employed, and that Chamberlin was replaced by two younger men. Accordingly, we find that Chamberlin did establish a *prima facie* case of age discrimination. *Bodenheimer*, 5 F.3d at 957.

¶27. Next we look to the record to determine if Columbus Paper rebutted Chamberlin's *prima facie* case of discrimination. At trial Jimmie Nolen, the owner who terminated Chamberlin, testified to several "problems" the company had with Chamberlin. Nolen stated that he had problems with Chamberlin "snooping" through the company files, and that Chamberlin opposed the company's attempts to "modernize." Nolen also testified that Chamberlin suffered from poor health and that this affected his job performance. On cross-examination, Nolen admitted that he did not fire Chamberlin for these age-neutral reasons.

¶28. This still leaves Columbus Paper's final age-neutral reason for Chamberlin's termination. Throughout Nolen's testimony (as well as Johnson's), he referred to the May 27, 1987, Agreement Of Purchase And Sale and stated that he thought that this agreement between himself and Chamberlin allowed him to terminate Chamberlin's employment on January 27, 1990, as the parties had agreed. In fact, Nolen's letter of January 22, 1990, informing Chamberlin that he was to wrap up his business with Columbus Paper by the end of the month referred to an "agreement" between Nolen and Chamberlin. Chamberlin testified that he did not understand the contract to mean that he would retire after January 27, 1990, but did not dispute that under the contract that he could be terminated after January 27, 1990, for no reason at all. Nevertheless, Chamberlin claimed that he was fired by Columbus Paper on January 22, 1990, because he was approaching his sixty-fifth birthday.

¶29. When we view the record in the light most favorable to the judgment, *Boeing v. Shipman*, 411 F.2d 365, 374-375 (5th Cir. 1969), we hold that Chamberlin failed to rebut all of Columbus Paper's age-neutral reasons. The record indicates that the May 27, 1987, contract was entered into knowingly by both parties and Chamberlin had counsel look over the proposed agreement. It was at Chamberlin's behest that the January 27, 1990, termination "at will" date be placed in the contract. Nothing within the four corners of the contract indicates that this date, January 27, 1990, is Chamberlin's sixty-fifth birthday. Likewise, nothing in the record indicates that Columbus Paper sought the contractual authority to terminate Chamberlin on his sixty-fifth birthday. The May 27, 1987, contract clearly allows for the termination of Chamberlin "at will" after January 27, 1990, and Chamberlin does not dispute that the contract allows for his termination after this date.

¶30. Even if we were to assume that Chamberlin successfully rebutted all of Columbus Paper's age-neutral reasons, Chamberlin was also required to prove that discrimination was the real cause for his termination. *St. Mary's*, 113 S. Ct. at 2752. The Fifth Circuit, when faced with whether an employer was entitled to a *j.n.o.v.* after a jury returned a verdict in favor of the terminated employee, held:

> The record in this case establishes that the plaintiff-appellees were in the ADEA's protected age group, that most were qualified, and that they were terminated and (except for one) replaced by younger employees. It carries the plaintiff no further. Group Hospital offered an adequate ground other than age for the discharge of each. In rebuttal, each appellee advanced little if anything more than his belief that age caused his discharge rather than the reason given by the employer. We are not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief. *See Houser v. Sears, Roebuck & Co.*, 627 F.2d 756 (5th Cir. 1980). Nor are we prepared to lay it down that because an employee is performing his job adequately, an employer is prohibited from replacing him with one whom he subjectively believes will do a better job. Were we to do so, we would go far to insure that an employer could do nothing to correct unsatisfactory performance in senior management, most of which will always be within the ADEA's protection. Even had the reasons articulated here been frivolous or capricious, had they been the genuine causes of these discharges they would have defeated liability under the ADEA. We reiterate: that statute proscribes only one reason for discharge-age. One who offers a frivolous or capricious reason, however, does so at a heavy risk that it will be discounted. Conversely, where, as here, the reasons articulated are rational ones, the objective truth of which is not seriously disputed, the burden of establishing them as pretextual is a heavy one indeed. As we have heretofore held in *Houser*, *supra*, it is not discharged by the general avowals of belief, however sincere that age-rather than an established adequate reason-was the real reason for the termination. More is required, perhaps a successful statistical demonstration by expert testimony, perhaps proof that others similarly situated were not discharged. Such proof is lacking here; and as to this, the verdict lacks rational support in the record. Since it does, and since the element of pretext was critical, the verdict cannot stand.

*Elliot v. Group Medical & Surgical Service*, 714 F.2d 556, 567 (5th Cir. 1983) (emphasis added).

¶31. Once Columbus Paper offered a non-discriminatory reason for Chamberlin's termination, whether credible or not, Chamberlin then had to prove by a preponderance of the evidence that his age played a determinative factor in Columbus Paper's decision to terminate him. *St. Mary's*, 113 S. Ct. at 2755-56. Chamberlin may show that Columbus Paper "relied upon a formal, facially discriminatory policy requiring adverse treatment of employees with that trait." *Hazen Paper*, 113 S. Ct. at 1706 (citing *Trans World*

*Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985), and *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 704-718 (1978)). Or Chamberlin may prove that the "employer [Columbus Paper] may have been motivated by the protected trait on an ad hoc, informal basis." *Id.* (citing *Anderson v. Bessemer City*, 470 U.S. 564 (1985)). "Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait (age) actually played a role in that process and had a determinative influence on the outcome." *Hazen Paper*, 113 S. Ct. at 1706.

¶32. At trial Chamberlin testified that none of Columbus Paper's owners or employees commented about his age as a decisionmaking factor. Likewise, there is no testimony from any fellow employee, past or present, that Columbus Paper talked about Chamberlin's age or generally made comments that could be taken as evidence of the company's discriminatory actions toward Chamberlin. Likewise, there is no evidence to indicate that Columbus Paper employed an age-based animus when hiring, promoting or compensating Chamberlin, or that Columbus Paper refused to hire specific older employees. *See Normand v. Research Institute of America, Inc.*, 927 F.2d 857, 862 (5th Cir. 1991). The documentary evidence offered at trial does not indicate that age entered into the decision-making process. Certainly, there was no evidence offered to show that Columbus Paper had a pattern or practice of terminating employees based upon their age. Columbus Paper's cross-examination of Chamberlin indicates that none of the problems Chamberlin had with Nolen and Johnson were age motivated, *i.e.*, Chamberlin outvoted by Johnson and Nolen on move into Tupelo market, Chamberlin outvoted on purchase of insurance, Chamberlin outvoted on serving as president of company.

¶33. Chamberlin's sole piece of evidence buttressing his claim that Columbus Paper impermissibly relied upon his age in its decision-making process is the fact that he received his termination letter a few days prior to his sixty-fifth birthday. On cross-examination, Chamberlin testified to the following:

Q. Okay. Now I want you to tell the jury again, I know they've heard this several times, but how did that--your birthday get in that agreement?

A. Well two months before I had written the company telling them that, uh, the lease on the building that I owned that they occupied at that time would be up and that I would be sixty-five shortly after that on, uh, January the--the twenty-seventh, and I gave them some choices that I would like to have. I had told them if they would, uh, buy the building at the price that I gave them that I would, uh, quit if they wanted me to, and that I would help train somebody else or else if they would lease the building for another five years that I would like to stay on and work for them as long as I was able.

¶34. Chamberlin has failed to offer any evidence which would allow a reasonable jury to conclude that age played a determinative role in his termination. *See Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir. 1991) (federal courts cautious about "self-serving and conclusory testimony" based on a subjective belief that age discrimination occurred). On appeal, Chamberlin relies heavily on *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429 (4th Cir. 1985), *cert. denied*, 475 U.S. 1016 (1986), for the proposition that direct evidence of age discrimination is not necessary when the plaintiff shows that the employer's non-discriminatory reason is pretext. Chamberlin's reliance upon *Wilhelm* is misplaced. *Wilhelm* was a "pretext" case. If under *Wilhelm* and other such "pretext" cases the plaintiff could show that the defendant's age-neutral reasons were pretextual, the jury should infer illegal age-based animus from the termination.

¶35. We find that the United States Supreme Court rejected these "pretext"cases in *St. Mary's* and held that the plaintiff had to show "pretext" and that age was the basis for the employer's termination. As

previously discussed, the employee in ADEA cases must show that the age-neutral reasons given by the employer were pretextual <u>and</u> that the employment decision-making process was based upon a discriminatory ground. *St. Mary's* at 2752. Chamberlin clearly failed to carry this burden, and his subjective belief that he was terminated because of his age is alone insufficient to raise a jury issue. *Elliot*, 714 F.2d at 567.

¶36. Furthermore, Chamberlin's reliance on *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503 (5th Cir. 1988), is misplaced. In Bienkowski, the plaintiff , appealing from the grant of summary judgment, offered affidavits to rebut his employer's age-neutral reasons for termination and offered statements made by his former employer that would tend to allow the fact-finder to determine that age might have been a factor in American's decision to terminate Bienkowski. Id. at 1507. In reversing the trial court's grant of summary judgment, the Fifth Circuit made it clear that it was not deciding whether the evidence was sufficient to support a finding of discrimination. In the case at bar, we are not confronted with any such concrete evidence of improper age-based animus.

¶37. Chamberlin failed at trial to rebut Columbus Paper's age-neutral reasons and prove by a preponderance of the evidence that Columbus Paper impermissibly considered Chamberlin's age when it terminated him. *Hazen Paper*, 113 S. Ct. at 1706. Therefore, when we look at the record and the inferences drawn from the evidence therein, we cannot say that a reasonable jury could have found that Chamberlin's conclusory statement that he was fired because of his sixty-fifth birthday, absent more, is legally sufficient to create a jury issue as to whether Columbus Paper violated the ADEA. Accordingly, the jury verdict in Chamberlin's favor should be reversed and rendered.

## CONCLUSION

¶38. At trial, Chamberlin was charged with proving a *prima facie* case of age discrimination, rebutting all age-neutral reasons offered by Columbus Paper, and proving by a preponderance of the evidence that Columbus Paper terminated him from his employment because of his age. Even when we look at the evidence in a light most favorable to Chamberlin, we are forced to conclude that Chamberlin failed to rebut all of Columbus Paper's age-neutral reasons for Chamberlin's termination and prove by a preponderance of the evidence that age impermissibly played a role in Columbus Paper's decision to terminate him. Accordingly, Chamberlin failed to satisfy the burden of proof placed upon him by 29 U.S.C. § 621 *et seq.*, and *Hazen Paper*, *supra*. Therefore, the judgment for John A. Chamberlin, Jr., in the total sum of $171,000 against Columbus Paper & Chemical Inc., is reversed and judgment rendered here for Columbus Paper & Chemical Inc.

¶39. **REVERSED AND RENDERED.**

**PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J. PRATHER, P.J., AND MILLS, J., NOT PARTICIPATING.**


     **BANKS, JUSTICE, DISSENTING:**

¶40. Because I believe that the majority misstates and misapplies the law, in derogation of the role of the finder of fact and our standards for review of such findings, I dissent.

I.

¶41. The majority concedes that the reasons offered by Columbus Paper for discharging Chamberlin were shown to have been pretextual. It then goes on to suggest that, in essence, Chamberlin's at-will status is a sufficient non-age-related "reason" for discharge and that, in any event, showing the reason given to be pretextual is insufficient to support a jury verdict of discrimination. Neither suggestion comports with established law.

¶42. Nolen was called as an adverse witness in plaintiff's case-in-chief. Nolen stated that Chamberlin had health problems, that Chamberlin was snooping through company files, and that Chamberlin opposed the company's attempts to modernize. Nolen testified that these were reasons that Chamberlin was dismissed. After Chamberlin's attorney pointed out that Nolen did not claim these reasons in his answer to the complaint, or mention them in his deposition, Nolen recanted and stated that these were not the reasons for Chamberlin's termination. Nolen mentioned that he thought that the contract terminated Chamberlin's employment and that he did not think Chamberlin was being fired. Nolen made that contention only after admitting that the previous reasons he had given were not the cause of the termination.

¶43. As I understand the majority, it suggests that the fact that Chamberlin had become an employee-at-will is a "reason" for his discharge. The logic of this suggestion escapes me. The fact that one can discharge an employee does not present a reason for so doing, at least where a statement of reason is required to rebut a prima facie case of discrimination. On the other hand, if Nolen made a mistake, and believed that the contract had been terminated, this mistake could be considered a nondiscriminatory reason. *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). The plain wording of the contract suggests that such a mistake is improbable. The jury is not required to believe that a mistake was made. It clearly could have found that any contention of mistaken interpretation was also pretextual, because the contract on its face simply changes the status of the employment from contractual to at-will. The impact of Nolen's earlier recantation upon his credibility was also a matter for the jury's consideration. We are duty-bound to accept the jury's resolution of these issues.

¶44. The majority is also mistaken in its analysis as to what occurs when a case has been proven pretextual. *St. Mary's Honor Center v. Hicks*, 113 S.CT. 2742 (1993), stands only for the proposition only that a plaintiff is not entitled to summary judgment as a matter of law once pretext is proven. On the other hand the Supreme Court also observed that :

> *The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.* Thus, rejection of the defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is required," 970 F.2d at 493 (emphasis added).

*St. Mary's*, 113 S.Ct. at 2749. In other words, while judgment for the plaintiff is not compelled by the prima facie case once proffered reasons are shown as pretextual, a finding for the plaintiff is sustained by that circumstance. While discounting intent has to be proven, it can be inferred from the employer's lack of

a credible explanation and a prima facie case. ***Rhodes v. Guberson Oil Tools***, 75 F. 3d 989 (5th Cir. 1996); ***Mills v. First Federal Savings & Loan Association of Belvidere***, No. 95-2105, slip op. (7th Cir. 1996); *See also* ***Manzer v. Diamon Shamrock Chemicals Co.***, 29 F.3d 1078 (3rd Cir. 1994) (to make a submissible case on the credibility of his employer's explanation, plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge"); ***McNabola v. Chicago Transit Authority,*** 10 F. 3d 501, 513 (7th Cir. 1993). *See also* ***Kralman v. Illinois Department of Veterans' Affairs***, 23 F.3d 150, 153 (7th Cir. 1994) ("A plaintiff may prove age discrimination by either of two methods: (1) by presenting direct or circumstantial evidence that age was the determining factor in the employment decision; or (2) by utilizing the indirect, burden-shifting method of proof . . . "); ***Torre v. Casio***, 42 F.3d 825, 829 (3rd. Cir. 1994) (stating "a plaintiff may demonstrate age discrimination under this portion of the ADEA by either direct or indirect evidence."). ***Mooney v. Aramco***, 54 F.3d 1207, 1216 (5th Cir. 1995) ("[i]n general, a plaintiff can prove age discrimination in two ways. A plaintiff can prove discriminatory animus by direct evidence or by an indirect or inferential method of proof . . . . ").

¶45. The majority is incorrect in finding that Chamberlin has failed to offer any evidence which would allow a reasonable jury to find for him. I would affirm the judgment of the circuit court.

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

1. Oftentimes an ADEA case will cite a Title VII case (race, sex, religion, national origin) as primary authority and vice-versa.